**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Defendant, AZOOGLEADS.COM, INC.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**ASIS INTERNET SERVICES**, a California corporation,

Plaintiff,

vs.

**AZOOGLE.COM, INC.**, a Delaware Corporation dba AZOOGLEADS US, INC., a Delaware Corporation, and DOES ONE through FIFTY, inclusive,

Defendants.

Case No. C-07-4630 MHP

**AZOOGLEADS.COM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SECURITY FOR COSTS INCLUDING ATTORNEYS' FEES**

DATE: JUNE 23, 2008
TIME: 2:00 PM
CTRM: 15, 18TH FLOOR

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

## INTRODUCTION

The purpose of CAN-SPAM's security provision, 15 U.S.C. §7706(g)(4), is twofold: First, it serves to protect a defendant from the costs of litigation by ensuring that the defendant will be able to recover its costs and attorneys' fees if it prevails. Second, it discourages plaintiffs from bringing frivolous lawsuits, by requiring them to put their money where their mouth is. Both of these purposes are fully realized in this case.

Plaintiff, ASIS Internet Services ("ASIS") is a CAN-SPAM litigation mill. Over the last couple of years, ASIS has brought eight, nearly identical, CAN-SPAM lawsuits. Despite its aggressive litigation strategy, in the related case, *ASIS v. Optin Global, et al.*, Case No. 05-5124-JCS (the "Related Case"), the Honorable Joseph C. Spero recently ruled that ASIS has **no standing to bring these CAN-SPAM claims**. Yet months prior to this recent decision, ASIS had coerced settlements from the vast majority of the nearly twenty defendants in that case.

Judge Spero's decision likely precludes ASIS from prosecuting the instant, admittedly related case. Even so, Defendant AzoogleAds.com, Inc. ("Azoogle") reasonably fears, based upon its experience in the Related Case, that it will be forced to spend hundreds of thousands of dollars in litigation costs and fees before it can establish ASIS's lack of standing and/or prevail on the merits. Unfortunately, these expenses are sometimes a reality of litigation. This is precisely why Congress enacted the security provision in CAN-SPAM. Because ASIS has no standing to bring this case, and because ASIS has admitted that it is on the brink of bankruptcy, the Court should require ASIS to post a significant security bond.

## BACKGROUND

### 1. ASIS's History of Bringing CAN-SPAM Lawsuits.

ASIS is a small, struggling ISP based in Eureka, California with a handful of employees and a proportionate number of customers. (Declaration of Henry M. Burgoyne, III in Support of AzoogleAds.com, Inc.'s Motion for Security for Costs Including Attorneys' Fees ("Burgoyne Decl.") ¶4.) A few years ago, ASIS and its

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

attorneys hatched a plan to bring numerous CAN-SPAM lawsuits, based on emails sent to ASIS's former customers—from whom ASIS never received consent to review their emails.[1]

ASIS has now churned out eight CAN-SPAM lawsuits. (*Id.* ¶¶5-12 & Exs. B-H.) The complaints for the eight lawsuits are nearly identical. ASIS has taken a shell complaint, and for each new action, substituted in different defendants. (*Id.*) And while ASIS has not received a single favorable ruling regarding the merits for any of its eight cases—and in fact, was found to lack standing to bring CAN-SPAM cases in the Related Case—ASIS has managed to scare the majority of the named defendants into quick settlements by the potential costs of litigation.

In the Related Case that has been disposed of on the merits, the Honorable Joseph C. Spero dismissed all of ASIS's claims on several grounds. (*Id.* ¶2 & Ex. A.) As an initial matter, Judge Spero found that **ASIS had no standing to bring its claims** because ASIS had not suffered any adverse effect resulting from the alleged unlawful emails, a predicate requirement for an ISP to bring a CAN-SPAM claim. (*Id.*) Moreover, Judge Spero found that even if ASIS did have standing, it could not establish any connection between the sender of the emails and the defendant. (*Id.*) Despite the seemingly preclusive effect of this decision on ASIS's standing, ASIS is still aggressively pursuing its remaining CAN-SPAM cases.

**2. Azoogle's Business.**

Azoogle is an Internet marketing company, which assists its clients, such as Netflix, Blockbuster, and General Electric, in the online marketing of their goods and services. (Declaration of David Graff in Support of Motion for Security for Costs Including Attorneys' Fees ("Graff Decl.") ¶2.) Azoogle itself does not send unsolicited commercial emails to generate leads or for any other reason. (*Id.* ¶3.) Rather, Azoogle

---

[1] In the Related Case, Azoogle raised the issue that ASIS's practice of reviewing its users' emails violates the Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq*. While the Court did not address this issue before dismissing ASIS's case, Azoogle still believes that ASIS's actions remain a significant concern.

enters into arms length contracts with affiliates to implement online marketing campaigns, including the sending out of lawful commercial emails, to generate leads on behalf of its end clients. (*Id.*) Prior to generating any leads for Azoogle, prospective affiliates must register with, and be accepted after a vetting process by, Azoogle to become an affiliate. (*Id.* ¶4.) A prospective affiliate must also agree to Azoogle's Affiliate Terms and Conditions and numerous Acceptable Use Policies, which among other things, expressly prohibit the affiliate from violating CAN-SPAM or any other law. (*Id.*) Today, Azoogle has in excess of 20,000 affiliates. (*Id.* ¶5.)

**ARGUMENT**

In an action filed under CAN-SPAM, "the court may, in its discretion, require an undertaking for the payment of such action, and assess reasonable costs, including reasonable attorneys' fees against any party." 15 U.S.C. §7706(g)(4). Moreover, Local Civil Rule 65.1-1 authorizes the Court, "[u]pon demand of any party, where authorized by law and for good cause shown," to "require any party to furnish security for costs which can be awarded against such party in an amount and on such terms as the Court deems appropriate." Ninth Circuit jurisprudence has also established the inherent power of the Court to require a plaintiff to post security for costs. *See In re Merrill Lynch Relocation Management, Inc.*, 812 F.2d 1116, 1121 (9th Cir. 1987).

Courts consider several factors in determining whether to require a party to post a bond for costs and fees, including: 1) the financial condition and ability to pay of the party who would post the bond (the "Posting Party"); 2) the merits of the Posting Party's underlying claims; 3) the extent and scope of the Posting Party's anticipated discovery; 4) the legal costs expected to be incurred by the non-Posting Party; and 5) the Posting Party's compliance with past court orders. *See RLS Associates, LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 220 (S.D.N.Y. 2006). Notwithstanding the foregoing factors, a party's apparent financial inability to pay prospective costs is sufficient in and of itself to justify an order requiring the posting of a cost bond. *Id.* In the case at hand, these factors overwhelmingly weigh in favor of requiring ASIS to post a substantial bond

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

to cover the costs and fees that Azoogle will incur in defending and dismissing this lawsuit.

ASIS is no stranger to CAN-SPAM litigation. Nor is ASIS a stranger to CAN-SPAM's provisions geared to protecting defendants from meritless claims brought by ISPs. In the Related Case, another defendant requested that the Court require ASIS to post security to cover the defendant's expected costs and fees. In addressing this motion, the Honorable Claudia Wilken warned ASIS "[i]f you had included them in your amended complaint, you better give that some thought and discuss it with your clients because I will not hesitate to award attorneys' fees for [the defendant] if it turns out that they weren't properly included." (Burgoyne Decl. ¶13 & Ex. I.) While Judge Wilken chose to leave ASIS with this stern warning instead of requiring a bond, this occurred before: a) ASIS had brought seven additional, nearly identical cases; b) been found to have no standing in the Related Case; and c) declared that it would file for bankruptcy should it be forced to pay attorneys' fees. The Court should not hesitate to require ASIS to post a substantial bond in this case.

**1. ASIS Is On The Brink Of Bankruptcy.**

ASIS's financial condition and ability to pay Azoogle's costs and attorneys' fees are paramount concerns in deciding whether to require security. Azoogle rightfully has serious concerns about ASIS's solvency. ASIS is a small business with limited assets and revenue. More significantly, on multiple occasions, over the course of a year in connection with the Related Case, counsel for ASIS stated that should ASIS be forced to pay costs and attorneys' fees, **ASIS would declare bankruptcy**. (Burgoyne Decl. ¶14.) As stated, ASIS's claims were recently dismissed in the Related Case, and therefore, ASIS now faces a significant bill of costs along with a request for attorneys' fees. Because the solvency of ASIS is a paramount concern in deciding whether to require security, ASIS's tenuous financial condition alone establishes the need for security pursuant to 15 U.S.C. §7706(g)(4).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

**2. ASIS Has No Standing To Bring CAN-SPAM Claims, and Could Not Prove Such Claims Even if it Did Have Standing.**

This is not ASIS's first CAN-SPAM case by a long shot. ASIS has brought **seven** other, nearly identical, CAN-SPAM actions over the last couple of years. Like its seven prior CAN-SPAM complaints, ASIS's Complaint here contains unsupported allegations of adverse effects and conspiracy between the defendant and unnamed doe parties. There is no reason to believe the merits of this case are any stronger than ASIS's other cookie-cutter suits, including the Related Case.

First and foremost, ASIS almost certainly does not have standing to bring this suit. CAN-SPAM only allows an Internet Access Service ("IAS") to bring an action where it is "adversely affected" by a violation of the statute. ASIS has, to date, not been able to proffer any evidence of an adverse effect—and in fact, may be collaterally stopped from trying to do so here. In assessing ASIS's supposed adverse effect in the Related Case, Judge Spero relied on *Gordon v. Virtumondo*, 2007 WL 1459395 (W.D. Wash. May 15, 2007). In *Gordon*, the court stated, "[n]ot only must CAN-SPAM private plaintiffs allege a particular type of harm, the adverse effect they allege must be significant. To hold otherwise would lead to absurd results." In applying the adverse effect requirement to the Related Case, Judge Spero found:

> No reasonable jury could find, based on the undisputed evidence that the [12,000 emails at issue] caused any significant adverse effect to ASIS. While there is some evidence that spam generally has imposed costs on ASIS over the years, there is *no* evidence that the Emails at issue in this action resulted in adverse effects to ASIS: there is *no* evidence in the record that any of the Emails either reached any active ASIS users (rather than being filtered by [ASIS's spam filtering service]) or were the subject of complaints to ASIS' there is *no* evidence in the record that ASIS had to increase its server capacity or experienced crashes as a result of the Emails; and there is *no* evidence in the record that ASIS experienced higher costs for filtering by Postini as a result of the Emails. . . . As a result, [ASIS] does not have standing to assert its claims under CAN-SPAM. (emphasis in original) (Burgoyne Decl. ¶2 & Ex. A.)

CAN-SPAM requires that the adverse effects specifically relate to the alleged emails; generalized costs—such as spam filtering services and routine software and hardware

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

upgrades—will not be sufficient to support a CAN-SPAM claim. Regardless ASIS has already admitted—in the Related Case—that it did no suffer any such adverse effects. ASIS cannot produce any evidence that it has suffered a real and significant harm as a result of the alleged misconduct. If ASIS had any such evidence, it would have produced it in the Related Case. As such ASIS knows that it does not have standing to bring this case. CAN-SPAM's security provision is designed to protect a defendant from precisely this sort of baseless litigation.

Moreover, like in ASIS's prior CAN-SPAM complaints, ASIS seeks to connect Azoogle to the emails at issue by alleging that Azoogle engaged in a conspiracy with unnamed parties to send the emails. Such unfounded allegations of a conspiracy are insufficient to state a CAN-SPAM case. Thus, in the Related Case, Judge Spero found: "[t]he evidence cited by ASIS to establish knowledge on [the defendant's] part is entirely speculative." (Burgoyne Decl. ¶2, Ex. A.) ASIS failed to submit any evidence to establish that Azoogle had "made a deliberate choice not to know" that third parties were sending out unlawful emails on its behalf. (*Id.*) Because ASIS has continued to rely on its speculative conspiracy claims to connect Azoogle to the alleged misconduct, the requirement for security is particularly appropriate here.

**3. ASIS's Prior Sweeping Discovery.**

In its prior CAN-SPAM cases, ASIS has employed extensive—and abusive—discovery. While ostensibly served to flesh out the facts of its cases, the extreme breadth of ASIS's discovery reveals a thinly-guised attempt to identify other parties that it could add as defendants in its CAN-SPAM conspiracy claims. Such discovery not only imposes significant direct expenses on a defendant, but also has collateral effects on a defendant's relationship with business partners. Specifically, ASIS has not only engaged in extensive discovery toward the defendants in its CAN-SPAM cases, but has also propounded significant discovery to numerous third parties who have relationships with these defendants, and are often none too pleased to be receiving burdensome subpoenas.

As a limited example, in the Related Case, ASIS took 11 depositions and propounded 23 interrogatories, 43 requests for admission, and 46 requests for production, seeking every conceivable document related to Azoogle's business, even where no tangible connection existed to the subject matter of the lawsuit. (Burgoyne Decl. ¶¶15-17 & Exs. J-L.) Perhaps most alarming is that ASIS issued in excess of 120 third party subpoenas to businesses supposedly related to Azoogle, in hopes of digging up any dirt. (Burgoyne Decl. ¶18 & Ex. M.) In the vast majority of cases, there was absolutely no connection between the subpoenaed party and the emails at issue in the case. This problem became so troublesome for Azoogle, that it was forced to seek a protective order, which the court granted. (*Id.* ¶19 & Ex. N.)

Given ASIS's extensive and inappropriate use of discovery in its prior CAN-SPAM cases, a posting of security is appropriate to ensure that ASIS understands the seriousness of bringing a CAN-SPAM lawsuit.

**4. Azoogle Reasonably Expects Significant Costs & Fees.**

Azoogle believes that ASIS's lawsuit is frivolous, and it expects to move to dismiss at the motion on the pleadings or summary judgment stage. Nonetheless, Azoogle does not underestimate the costs it will likely incur during this process. This calculation is based on the costs incurred by Azoogle in the nearly identical Related Case, caused by ASIS's aggressive discovery and motion practice. As the Court is well aware, the costs of discovery and motion practice can quickly escalate into the hundreds of thousands of dollars. Accordingly, Azoogle believes that a conservative estimate of $200,000 is an appropriate value for a security requirement.

**CONCLUSION**

For all of the reasons set forth above, the Court should require ASIS to post a bond in the form of security for costs and fees in the amount of $200,000.

//

//

//

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Dated: May 9, 2008

Henry M. Burgoyne, III
Karl S. Kronenberger
Jeffrey M. Rosenfeld
Kronenberger Burgoyne, LLP

By: /s/
Jeffrey M. Rosenfeld

Attorneys for Defendant,
AZOOGLEADS.COM, INC.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com