# Exhibit J

Jason K. Singleton, State Bar #166170
lawgroup@sbcglobal.net
Richard E. Grabowski, State Bar #236207
rgrabows@pacbell.net
**SINGLETON LAW GROUP**
611 "L" Street, Suite A
Eureka, CA 95501

(707) 441-1177
FAX 441-1533

Attorneys for Plaintiff, ASIS Internet Services

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation,<br><br>       Plaintiff,<br>vs.<br><br>OPTIN GLOBAL, INC., a Delaware Corporation, et al.,<br><br>       Defendants. | Case No. C-05-5124 JCS<br><br>PLAINTIFF'S SPECIAL INTERROGATORIES TO AZOOGLEADS.COM, INC., SET ONE<br><br>F.R.C.P., Rule 33 |

PROPOUNDING PARTY  :    PLAINTIFF, **ASIS INTERNET SERVICES**

RESPONDING PARTY   :    DEFENDANT **AZOOGLEADS.COM, INC.**

SET NUMBER         :    **ONE**

TO:  **DEFENDANT AZOOGLEADS.COM, INC.**, and ITS ATTORNEY OF RECORD:

   **YOU ARE HEREBY NOTIFIED** that pursuant to the requirements of *F.R.C.P.*, Rule 26, 33, and 36 Plaintiff **ASIS INTERNET SERVICES** requests that within thirty (30) days after service upon them, **DEFENDANT** serve upon Plaintiff answers under oath to the below interrogatories. In responding to these interrogatories, the following definitions and instructions shall apply:

### I. INSTRUCTIONS

   1.   This request for Special Interrogatories is of an ongoing nature and, should you acquire additional information responsive to these Special Interrogatories, the answers shall be

1 updated to provide the additional information.

2     2.    If privilege not to answer is claimed as to a document, specify the privilege relied upon and include the date, title, description, subject and purpose of the document; the name and position of the author and addresses of the other recipients. If privilege not to answer is asserted as to a communication, specify the date, place, subject and purpose of the communication and the names and positions of all persons present.

    3.    If a refusal to answer an interrogatory is stated on the grounds of burdensome, identify the number and nature of documents or computer records, and the estimated number of person hours and costs required to conduct the search.

    4.    If any interrogatory cannot be answered in full, answer to the extent possible and specify reasons for the inability to answer in full.

    5.    If you object to any part of any interrogatory, but other parts are unobjectionable, you must respond in full to the parts to which you do not object. For the part which you find objectionable, identify all bases for you objection and the person or persons on whose behalf the objections is interposed.

## II. DEFINITIONS

The words in **BOLDFACE** within the requests below are defined as follows:

(1) **YOU** and **YOUR** as used herein refers to Defendant: **AZOOGLEADS.COM, INC.;** and your officers, directors, managers, employees, agents, and assigns.

(2) **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your alter egos, your employees, your agents, your assigns, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(3) **DEFENDANT AZOOGLEADS.COM** refers to **DEFENDANT AZOOGLEADS.COM, INC., and DOES THREE through FIFTY, inclusive,** and for each of them, their officers, directors, mangers, employees, agents, and assigns.

(4) **INCIDENT** includes the circumstances and events surrounding the alleged incident, injury, or other occurrence giving rise to the action, i.e., Plaintiff's receipt of

1  **DEFENDANTS' EMAILS**, as alleged in the complaint.
2  (5)  **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.
4  (6)  **ADDRESS** means the street **ADDRESS**, including the city, state, and zip code.
5  (7)  **DIRECTOR** means a natural person designated in the articles as such or elected by the incorporators and natural persons designated, elected or appointed by any other name or title to act as directors, and their successors as defined in **California Corporations Code** § 164.
9  (8)  **OFFICER** means a chairman of the board, a president, a secretary, a chief financial officer and any such other officers with such titles and duties as shall be stated in the bylaws or determined by the board and as may be necessary to enable the corporation to sign instruments and share certificates as defined in **California Corporations Code** § 312.
14 (9)  **AFFILIATE** is a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity who has been hired, employed, contracted, purchased, or licensed to send **EMAILS** on **DEFENDANTS'** behalf, or to acquire client profiles, sales leads, sales, contracts, or agreements on **DEFENDANTS'** behalf. **AFFILIATES** are also defined as persons hired, employed, contracted, purchased, or licensed to make sales directly or indirectly for **DEFENDANTS**. **AFFILIATES** are also email list providers and/or providers either of software or services to send bulk email to lists provided by them or others. **DEFENDANTS** may be in a like relationship with other entities as their **AFFILIATES**, that is **DEFENDANTS** were hired by COMPANY X to send **EMAILS** on their behalf.
24 (10) **EMAIL** is an electronic mail message as defined in 15 **USC** § 7702(6).
25 (11) **EMAIL ADDRESS** is an electronic mail address as defined in 15 **USC** § 7702(5).
26 (12) **DOMAIN NAME** or **DOMAIN** is any alphanumeric designation which is registered with or assigned by any **DOMAIN NAME** registrar, **DOMAIN NAME** registry, or other **DOMAIN NAME** registration authority as part of an electronic address on the Internet,

1  as defined in 15 **USC** § 7702(4).

2  (13) **COMMERCIAL ELECTRONIC MAIL MESSAGE** is any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose), as defined in 15 **USC** § 7702(2)(A).

6  (14) **SEND, SENT** or **INITIATE** when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or transmission of such message, but shall not include actions that constitute routine conveyance of such message, as defined in 15 **USC** §7702(9). For purposes of this definition, more than one person may be considered to have initiated a message.

11 (15) **HEADER** or **HEADER INFORMATION** means the source, destination, and routing information attached to an electronic mail message, including the originating **DOMAIN NAME** and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message.

15 (16) **PROTECTED COMPUTER** is a computer that is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States, as defined in 15 **USC** § 7702(13) and 18 **USC** § 1030(e)(2)(B).

19 (17) **RECIPIENT,** when used with respect to a commercial electronic mail message, means an authorized user of the electronic mail address to which the message was **SENT** or delivered, as defined in 15 **USC** § 7702(14). If a recipient of a commercial electronic mail message has one or more electronic mail addresses in addition to the address to which the message was **SENT** or delivered, the recipient shall be treated as a separate recipient with respect to each such address.

25 (18) **AFFIRMATIVE CONSENT** or **OPT-IN,** when used with respect to a commercial electronic mail message, means (as defined in 15 **USC** § 7702(1)) that:

27 (A) the recipient expressly consented to receive the message, either in response to a clear and conspicuous request for such consent or at the

recipient's own initiative; and

(B) if the message is from a party other than the party to which the recipient communicated such consent, the recipient was given clear and conspicuous notice at the time the consent was communicated that the recipient's electronic mail address could be transferred to such other party for the purpose of initiating **COMMERCIAL ELECTRONIC MAIL MESSAGES**.

(19) **AFFIRMATIVE CONSENT** or **OPT-IN,** when used with respect to a commercial electronic mail advertisement, means (as defined in **California Business and Professions Code §** 17529.1(d) and (o)): that the recipient has expressly consented to receive e-mail advertisements from the advertiser, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative; or the intended recipient has a preexisting or current business relationship, as defined in subdivision **California Business and Professions Code §** 17529.1(l), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.

(20) **DECEPTIVE SUBJECT HEADING** or **DECEPTIVE SUBJECT LINE,** as relates to a commercial electronic mail message, is a subject heading of the electronic mail message that would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in 15 **USC** § 45), as defined in 15 **USC** §7704(a)(2), with the intent of inducing the recipient to open the message, as described in 15 **USC** § 7701(a)(8). (Also see **California Business and Professions Code §** 17529.5(a)(3)).

(21) **SUBMIT BUTTON, EMAIL IMAGE,** or **EMAIL URL** refer to any image, word, set of words, or fixtures in an email, that when the recipient activates by clicking, either send a message or signal to another computer and/or open a web browser containing an internet web site or Internet pop-up window.

(22) **SENDER,** when used with respect to a commercial electronic mail message, means a person who initiates or hires another to initiate such a message and whose product, service, or Internet web site is advertised or promoted by the message, as defined in 15 *USC* § 7702(16)(A).

(23) **FROM NAME** represents the information provided by the **SENDER** as the source of the **EMAIL** in the **EMAIL HEADER** and appears in the "From:" portion of the **EMAIL HEADER.**

(24) **DIRECTED WEB SITE** refers to any internet web site an email recipient is linked to by a URL or other type link contained within an email.

(25) **INCIDENT PERIOD** refers to the period from August 1, 2005 to present.

(26) **LEAD GENERATORS** refers to companies who hire third parties, usually called **AFFILIATES,** to generate consumer sales leads or consumer profiles and who then resell or deliver those sales leads under contract to product and service companies.

(27) **URL** refers to **U**niform **R**esource **L**ocator, the global address of documents and other resources on the World Wide Web. The first part of the address indicates what protocol to use, and the second part specifies the **IP ADDRESS** or the **DOMAIN NAME** where the resource is located.

(28) **MORTGAGE BROKERS** refers to: real estate agents or agencies; banks; mortgage companies; loan brokers; or other lending institutions or lending agents named in this suit.

## III. INTERROGATORIES

The following interrogatories should be answered fully, separate, in writing, and under oath, in accordance with and subject to the provisions of *F.R.C.P.* 33, which are hereby incorporated herein by reference:

The following Special Interrogatories are propounded to **YOU** regarding the **INCIDENT** defined as follows:

   **INCIDENT** includes the circumstances and events surrounding the alleged **INCIDENT**, injury, or other occurrence giving rise to the action, i.e., Plaintiff's receipt of **DEFENDANTS' EMAILS**, as alleged in the complaint. Plaintiff's

PROTECTED COMPUTER can be identified as the email server for DOMAIN "asis.com"

**INTERROGATORY NO. 1:**

Has **DEFENDANT AZOOGLEADS.COM** sent or had sent commercial emails to Plaintiff's **PROTECTED COMPUTERS** since August 01, 2005?

**RESPONSE:**


**INTERROGATORY NO. 2:**

Did **DEFENDANT AZOOGLEADS.COM** use affiliates to send emails to Plaintiff's **PROTECTED COMPUTERS** during the **INCIDENT PERIOD**?

**RESPONSE:**


**INTERROGATORY NO. 3:**

How many **COMMERCIAL ELECTRONIC EMAILS** has **DEFENDANT AZOOGLEADS.COM** sent to Plaintiff's **PROTECTED COMPUTERS** since August 01, 2005? Please provide this information by month since August 01, 2005.

**RESPONSE:**


**INTERROGATORY NO. 4:**

How many **COMMERCIAL ELECTRONIC EMAILS** has **DEFENDANT AZOOGLEADS.COM'S AFFILIATES** sent to Plaintiff's **PROTECTED COMPUTERS,** on **DEFENDANT AZOOGLEADS.COM 'S** behalf since August 15, 2005? Please provide this information by month since August 15, 2005.

**RESPONSE:**


**INTERROGATORY NO. 5:**

How many **COMMERCIAL ELECTRONIC EMAILS** have been sent to <u>any</u> **PROTECTED COMPUTER** by **DEFENDANT AZOOGLEADS.COM** or **DEFENDANT AZOOGLEADS.COM'S AFFILIATES** on **DEFENDANT AZOOGLEADS.COM'S** behalf since August 01, 2005? Please

1  provide this information by month since August 01, 2005.
2  **RESPONSE:**
3
4  **INTERROGATORY NO. 6:**
5  Does **DEFENDANT AZOOGLEADS.COM** own or operate web sites advertising mortgage
6  financing or soliciting consumer information? If so please provide a list of the **URLs** for the
7  sites or printed copies of the sites if they are not accessible on the Internet. Provide all sites
8  owned during the **INCIDENT PERIOD**.
9  **RESPONSE:**
10
11  **INTERROGATORY NO. 7:**
12  Does **DEFENDANT AZOOGLEADS.COM** or its **AFFILIATES** use **OPT-IN** lists when
13  **INITIATING EMAILS** to potential recipients?
14  **RESPONSE:**
15
16  **INTERROGATORY NO. 8:**
17  If **DEFENDANT AZOOGLEADS.COM** or its **AFFILIATES** use **OPT-IN** lists, what is the
18  definition or process used for establishing the potential recipient's **AFFIRMATIVE CONSENT**
19  to receive **COMMERCIAL EMAIL ADVERTISEMENTS**?
20  **RESPONSE:**
21
22  **INTERROGATORY NO. 9:**
23  Who does/did **DEFENDANT AZOOGLEADS.COM** have agreements with to acquire sales
24  leads from, during the **INCIDENT PERIOD**? Please provide the name, **ADDRESS**, and
25  telephone number for each person or entity identified, this list should include all **AFFILIATES**
26  of **DEFENDANT AZOOGLEADS.COM**.
27  **RESPONSE:**
28

**INTERROGATORY NO. 10:**

Who does/did **DEFENDANT AZOOGLEADS.COM** have agreements with to provide sales leads to, during the **INCIDENT PERIOD**? Please provide the name, **ADDRESS**, and telephone number for each person or entity identified.

**RESPONSE:**


**INTERROGATORY NO. 11:**

How much money was paid to **DEFENDANT AZOOGLEADS.COM** by purchasers for sales leads during the **INCIDENT PERIOD**? Please provide the dollar amounts by company and month.

**RESPONSE:**


**INTERROGATORY NO. 12:**

How much money was paid to **AFFILIATES** or others by **DEFENDANT AZOOGLEADS.COM** to acquire sales leads during the **INCIDENT PERIOD**? Please provide the dollar amounts by company/individual.

**RESPONSE:**


**INTERROGATORY NO. 13:**

What manager or individual is responsible for establishing agreements and or contracts with **AFFILIATE** companies? Please provide the name, title, business **ADDRESS** and telephone number of the manager or individual.

**RESPONSE:**


**INTERROGATORY NO. 14:**

What manager or individual is responsible for the sales of sales leads? Please provide the name, title, business **ADDRESS** and telephone number of the manager or individual.

**RESPONSE:**

**INTERROGATORY NO. 15:**

Who are the **AFFILIATES** of **DEFENDANT AZOOGLEADS.COM** that sent **COMMERCIAL ELECTRONIC MAIL MESSAGES** on behalf of **DEFENDANT AZOOGLEADS.COM** during the incident period? Please provide the name, **ADDRESS,** and phone number of all **AFFILIATES** who have sent **COMMERCIAL ELECTRONIC MAIL MESSAGES** on behalf of **DEFENDANT AZOOGLEADS.COM** since August 01, 2005.

**RESPONSE:**

**INTERROGATORY NO. 16:**

Who are the **AFFILIATES** of **DEFENDANT AZOOGLEADS.COM** that have sent **COMMERCIAL ELECTRONIC MAIL MESSAGES** on behalf of **DEFENDANT AZOOGLEADS.COM** to Plaintiff's **PROTECTED COMPUTER**? Please provide the name, **ADDRESS,** and phone number of all **AFFILIATES** who have sent **COMMERCIAL ELECTRONIC MAIL MESSAGES** on behalf of **DEFENDANT AZOOGLEADS.COM** since August 15, 2005 to **EMAIL ADDRESSES** at the email server with **DOMAIN NAME** of "asis.com."

**RESPONSE:**

**INTERROGATORY NO. 17:**

What manager or individual is responsible for payment of sales lead generation to **AFFILIATE** companies? Please provide the name, title, business **ADDRESS** and telephone number of the manager or individual.

**RESPONSE:**

**INTERROGATORY NO. 18:**

WHO provided the "Bruce Wolf" lead to **AZOOGLEADS.COM**? Please provide the NAME,