Exhibit K

1  **Jason K. Singleton**, State Bar #166170
   lawgroup@sbcglobal.net
2  **Richard E. Grabowski**, State Bar #236207
   rgrabows@pacbell.net
3  **SINGLETON LAW GROUP**
   **611 "L" Street, Suite A**
4  **Eureka, CA 95501**

5  **(707) 441-1177**
   **FAX  441-1533**
6

7  **Attorneys for Plaintiff, ASIS Internet Services**

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 **ASIS INTERNET SERVICES, a California**      )   **Case No. C-05-5124 JCS**
11 **corporation,**                              )
                                                 )   **PLAINTIFF'S REQUESTS FOR**
12        **Plaintiff,**                         )   **ADMISSION TO AZOOGLEADS.COM,**
                                                 )   **INC., SET ONE**
13 **vs.**                                       )
                                                 )
14 **OPTIN GLOBAL, INC., a Delaware**            )   *F.R.C.P.*, **Rule 36**
   **Corporation, et al.,**                      )
15                                               )
                                                 )
16        **Defendants.**                        )
   ─────────────────────────────────────────────)

17 **PROPOUNDING PARTY  :     PLAINTIFF, ASIS INTERNET SERVICES**

18 **RESPONDING PARTY    :     DEFENDANT AZOOGLEADS.COM, INC.**

19 **SET NUMBER          :     ONE**

20 **TO:   DEFENDANT AZOOGLEADS.COM, INC., and ITS ATTORNEY OF RECORD:**

21       **YOU ARE HEREBY NOTIFIED** that pursuant to the requirements of *F.R.C.P.*, Rule 33,

22 Plaintiff **ASIS INTERNET SERVICES** requests that **DEFENDANT AZOOGLEADS.COM, INC.,**

23 admit the truthfulness of the following requests for admission fully in writing and under oath for

24 the purpose of this action only and subject to all pertinent objections to admissibility which may

25 be interposed at the trial.  Your responses are to be served on Plaintiff's attorneys of record,

26 the Singleton Law Group, within thirty (30) days after service of said request for admissions.

27       In responding to these requests, the following definitions and instructions shall apply:

28       In answering these requests furnish all the information available to you, including

REQUEST FOR ADMISSIONS-AZOOGLE                 1                          C-05-5124 JCS

1    information in the possession of any employee or agent of Defendant.  Defendant is required
2    to exercise due diligence to secure the information necessary to answer these requests.  If an
3    objection is made, the reasons for such objection must be stated.  If only part of the request
4    can be admitted, Defendant is required in good faith to specify which part is true and qualify or
5    deny the remainder.  Defendant may not cite lack of information or knowledge as a reason for
6    failing to admit a request without a reasonable inquiry.  **DEFENDANTS** are required to specify
7    the reasons for their inability to fully answer the request, and must state whatever information
8    or knowledge is available to you.

9                 **DEFINITIONS**

10      The words in **BOLDFACE** within the requests below are defined as follows:

11  (1)   **YOU** and **YOUR** as used herein refers to Defendants: **AZOOGLEADS.COM, INC.,** and
12        your officers, directors, managers, employees, agents, and assigns.

13  (2)   **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your alter egos, your
14        employees, your agents, your assigns, your insurance companies, their agents, their
15        employees, your attorneys, your accountants, your investigators, and anyone else
16        acting on your behalf.

17  (3)   **DEFENDANT AZOOGLEADS.COM** refers to **DEFENDANTS AZOOGLEADS.COM,**
18        **INC., and DOES THREE through FIFTY, inclusive,** and for each of them, their
19        officers, directors, mangers, employees, agents, and assigns.

20  (4)   **INCIDENT** includes the circumstances and events surrounding the alleged incident,
21        injury, or other occurrence giving rise to the action, i.e., Plaintiff's receipt of
22        **DEFENDANTS' EMAILS**, as alleged in the complaint.

23  (5)   **PERSON** includes a natural person, firm, association, organization, partnership,
24        business, trust, corporation, or public entity.

25  (6)   **ADDRESS** means the street **ADDRESS**, including the city, state, and zip code.

26  (7)   **DIRECTOR** means a natural person designated in the articles as such or elected by the
27        incorporators and natural persons designated, elected or appointed by any other name
28        or title to act as directors, and their successors as defined in **California Corporations**

1    **Code** § 164.

2    (8)    **OFFICER** means a chairman of the board, a president, a secretary, a chief financial

3    officer and any such other officers with such titles and duties as shall be stated in the

4    bylaws or determined by the board and as may be necessary to enable the corporation

5    to sign instruments and share certificates as defined in **California Corporations Code**

6    § 312.

7    (9)    **AFFILIATE** is a natural person, firm, association, organization, partnership, business,

8    trust, corporation, or public entity who has been hired, employed, contracted,

9    purchased, or licensed to send **EMAILS** on **DEFENDANTS'** behalf, or to acquire client

10   profiles, sales leads, sales, contracts, or agreements on **DEFENDANTS'** behalf.

11   **AFFILIATES** are also defined as persons hired, employed, contracted, purchased, or

12   licensed to make sales directly or indirectly for **DEFENDANTS**. **AFFILIATES** are also

13   email list providers and/or providers either of software or services to send bulk email to

14   lists provided by them or others. **DEFENDANTS** may be in a like relationship with other

15   entities as their **AFFILIATES,** that is **DEFENDANTS** were hired by COMPANY X to

16   send **EMAILS** on their behalf.

17   (10)   **EMAIL** is an electronic mail message as defined in 15 *USC* § 7702(6).

18   (11)   **EMAIL ADDRESS** is an electronic mail address as defined in 15 *USC* § 7702(5).

19   (12)   **DOMAIN NAME** or **DOMAIN** is any alphanumeric designation which is registered with

20   or assigned by any **DOMAIN NAME** registrar, **DOMAIN NAME** registry, or other

21   **DOMAIN NAME** registration authority as part of an electronic address on the Internet,

22   as defined in 15 *USC* § 7702(4).

23   (13)   **COMMERCIAL ELECTRONIC MAIL MESSAGE** is any electronic mail message the

24   primary purpose of which is the commercial advertisement or promotion of a

25   commercial product or service (including content on an Internet website operated for a

26   commercial purpose), as defined in 15 *USC* § 7702(2)(A).

27   (14)   **SEND, SENT** or **INITIATE** when used with respect to a commercial electronic mail

28   message, means to originate or transmit such message or to procure the origination or

transmission of such message, but shall not include actions that constitute routine conveyance of such message, as defined in 15 **USC** §7702(9). For purposes of this definition, more than one person may be considered to have initiated a message.

(15) **HEADER** or **HEADER INFORMATION** means the source, destination, and routing information attached to an electronic mail message, including the originating **DOMAIN NAME** and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message.

(16) **PROTECTED COMPUTER** is a computer that is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States, as defined in 15 **USC** § 7702(13) and 18 **USC** § 1030(e)(2)(B).

(17) **RECIPIENT,** when used with respect to a commercial electronic mail message, means an authorized user of the electronic mail address to which the message was **SENT** or delivered, as defined in 15 **USC** § 7702(14). If a recipient of a commercial electronic mail message has one or more electronic mail addresses in addition to the address to which the message was **SENT** or delivered, the recipient shall be treated as a separate recipient with respect to each such address.

(18) **AFFIRMATIVE CONSENT** or **OPT-IN,** when used with respect to a commercial electronic mail message, means (as defined in 15 **USC** § 7702(1)) that:

    (A)    the recipient expressly consented to receive the message, either in response to a clear and conspicuous request for such consent or at the recipient's own initiative; and

    (B)    if the message is from a party other than the party to which the recipient communicated such consent, the recipient was given clear and conspicuous notice at the time the consent was communicated that the recipient's electronic mail address could be transferred to such other party for the purpose of initiating **COMMERCIAL ELECTRONIC MAIL MESSAGES**.

1  (19)  **AFFIRMATIVE CONSENT** or **OPT-IN,** when used with respect to a commercial
2  electronic mail advertisement, means (as defined in **California Business and**
3  **Professions Code** § 17529.1(d) and (o)): that the recipient has expressly consented to
4  receive e-mail advertisements from the advertiser, either in response to a clear and
5  conspicuous request for the consent or at the recipient's own initiative; or the intended
6  recipient has a preexisting or current business relationship, as defined in subdivision
7  **California Business and Professions Code** § 17529.1(l), with the advertiser
8  promoting the lease, sale, rental, gift offer, or other disposition of any property, goods,
9  services, or extension of credit.

10  (20)  **DECEPTIVE SUBJECT HEADING** or **DECEPTIVE SUBJECT LINE,** as relates to a
11  commercial electronic mail message, is a subject heading of the electronic mail
12  message that would be likely to mislead a recipient, acting reasonably under the
13  circumstances, about a material fact regarding the contents or subject matter of the
14  message (consistent with the criteria used in 15 **USC** § 45), as defined in 15 **USC**
15  §7704(a)(2), with the intent of inducing the recipient to open the message, as described
16  in 15 **USC** § 7701(a)(8).  (Also see **California Business and Professions Code** §
17  17529.5(a)(3)).

18  (21)  **SUBMIT BUTTON, EMAIL IMAGE,** or **EMAIL URL** refer to any image, word, set of
19  words, or fixtures in an email, that when the recipient activates by clicking, either send a
20  message or signal to another computer and/or open a web browser containing an
21  internet web site or Internet pop-up window.

22  (22)  **SENDER,** when used with respect to a commercial electronic mail message, means a
23  person who initiates or shires another to imitate such a message and whose product,
24  service, or Internet web site is advertised or promoted by the message, as defined in 15
25  **USC** § 7702(16)(A).

26  (23)  **FROM NAME** represents the information provided by the **SENDER** as the source of the
27  **EMAIL** in the **EMAIL HEADER** and appears in the "From:" portion of the **EMAIL**
28  **HEADER.**

1  (24)  **DIRECTED WEB SITE** refers to any internet web site an email recipient is linked to by a

2       URL or other type link contained within an email.

3  (25)  **INCIDENT PERIOD** refers to the period from August 1, 2005 to present.

4  (26)  **LEAD GENERATORS** refers to companies who hire third parties, usually called

5       **AFFILIATES,** to generate consumer sales leads or consumer profiles and who then

6       resell or deliver those sales leads under contract to product and service companies.

7  (27)  **URL** refers to Uniform Resource Locator, the global address of documents and other

8       resources on the World Wide Web.  The first part of the address indicates what protocol

9       to use, and the second part specifies the **IP ADDRESS** or the **DOMAIN NAME** where

10      the resource is located.

11 (28)  **MORTGAGE BROKERS** refers to: real estate agents or agencies; banks; mortgage

12      companies; loan brokers; or other lending institutions or lending agents named in this

13      suit.

14                          **REQUESTS FOR ADMISSION**

15        Pursuant to the above definitions, the following Requests for Admission are propounded

16  to **YOU**:

17                **DEFENDANTS' ANSWERS & AFFIRMATIVE DEFENSES, ETC.**

18  **REQUEST NO. 1:**

19  Admit that there is no basis in fact or law to **YOUR FIRST AFFIRMATIVE DEFENSE** at page

20  12, ¶1, of **YOUR** Answer to the Complaint, **which states:**

21          "1.    Plaintiff has failed to state a cause of action upon which relief may
                  be granted."

22  **RESPONSE:**

23

24  **REQUEST NO. 2:**

25  Admit that there is no basis in fact or law to **YOUR SECOND AFFIRMATIVE DEFENSE** at

26  page 12, ¶2, of **YOUR** Answer to the Complaint, **which states:**

27          "2.    To the extent Defendant is found liable for violating California law,
                  Plaintiff assumed the risk and contributed to its own damages."

28

1   **RESPONSE:**

2

3   **REQUEST NO. 3:**

4   Admit that there is no basis in fact or law to **YOUR THIRD AFFIRMATIVE DEFENSE** at page

5   12, ¶ 3, of **YOUR** Answer to the Complaint, **which states**:

6           "3.     The allegations contained in Plaintiff's Complaint fail to confer
                    personal jurisdiction over Defendant."

7   **RESPONSE:**

8

9   **REQUEST NO. 4:**

10  Admit that there is no basis in fact or law to **YOUR FOURTH AFFIRMATIVE DEFENSE** at

11  page 12, ¶4, of **YOUR** Answer to the Complaint, **which states**:

12          "4.     Any loss, injury, or damage incurred by Plaintiff was proximately
                    caused by the acts of third parties or non-parties whom Defendant
13                  neither controlled nor had the right to control."

14  **RESPONSE:**

15

16  **REQUEST NO. 5:**

17  Admit that there is no basis in fact or law to **YOUR FIFTH AFFIRMATIVE DEFENSE** at page

18  12, ¶ 5, of **YOUR** Answer to the Complaint, **which states**:

19          "5.     Plaintiff's claims are barred, in whole or in part, by the doctrine of
                    unclean hands and Plaintiff should be estopped from bringing this
20                  lawsuit..

21  **RESPONSE:**

22

23  **REQUEST NO. 6:**

24  Admit that there is no basis in fact or law to **YOUR SIXTH AFFIRMATIVE DEFENSE** at page

25  12, ¶ 6, of **YOUR** Answer to the Complaint, **which states**:

26          "6.     Plaintiff has failed to mitigate damages, if any.

27  **RESPONSE:**

28

**REQUEST NO. 7:**

Admit that there is no basis in fact or law to **YOUR SEVENTH AFFIRMATIVE DEFENSE** at page 13, ¶ 7, of **YOUR** Answer to the Complaint, **which states**:

> "7.　　Damages, if any, were proximately caused by Plaintiff and, therefore, require an allocation of fault."

**RESPONSE:**

**REQUEST NO. 8:**

Admit that there is no basis in fact or law to **YOUR EIGHTH AFFIRMATIVE DEFENSE** at page 13, ¶ 8, of **YOUR** Answer to the Complaint, **which states**:

> "8.　　Plaintiff invited and consented to the acts of Defendant alleged in the Complaint."

**RESPONSE:**

**REQUEST NO. 9:**

Admit that there is no basis in fact or law to **YOUR NINTH AFFIRMATIVE DEFENSE** at page 13, ¶ 9, of **YOUR** Answer to the Complaint, **which states**:

> "9.　　Plaintiff waived any claim or cause of action against Defendant for the acts alleged in the Complaint."

**RESPONSE:**

**REQUEST NO. 10:**

Admit that there is no basis in fact or law to **YOUR TENTH AFFIRMATIVE DEFENSE** at page 13, ¶ 10, of **YOUR** Answer to the Complaint, **which states**:

> "10.　　Plaintiff has failed to bring this action in the appropriate venue."

**RESPONSE:**

**REQUEST NO. 11:**

Admit that there is no basis in fact or law to **YOUR ELEVENTH AFFIRMATIVE DEFENSE** at

1  page 13, ¶ 11, of **YOUR** Answer to the Complaint, **which states**:

2       "11.   Plaintiff's claims are barred in whole, or in part, under the doctrine
              of preemption."

3

4  **RESPONSE:**

5

6                          **LIABILITY IN GENERAL**

7  **REQUEST NO. 12:**

8  Admit that **DEFENDANT AZOOGLEADS.COM** is in the business of acquiring consumer profile

9  information by sending emails or having emails sent by **AFFILIATES** and/or other agents.

10 **RESPONSE:**

11

12 **REQUEST NO. 13:**

13 Admit that **DEFENDANT AZOOGLEADS.COM** is in the business of purchasing consumer

14 profile information for resale to other businesses.

15 **RESPONSE:**

16

17 **REQUEST NO. 14:**

18 Admit that **DEFENDANT AZOOGLEADS.COM** is in the business of selling consumer profile

19 information to real estate agents/brokers, mortgage firms, banks, and/or other loan origination

20 organizations.

21 **RESPONSE:**

22

23 **REQUEST NO. 15:**

24 Admit that **DEFENDANT AZOOGLEADS.COM** contracted with one or more **AFFILIATES** to

25 deliver consumer profiles as sales leads.

26 **RESPONSE:**

27

28

**REQUEST NO. 16:**

Admit that **DEFENDANT AZOOGLEADS.COM** contracted with one or more **AFFILIATES** to deliver consumer profiles as sales leads.

**RESPONSE:**


**REQUEST NO. 17:**

Admit that **DEFENDANT AZOOGLEADS.COM** acquired the "Bruce Wolf" lead identified in Plaintiff's Second Amended Complaint from an **AFFILIATE** of **AZOOGLEADS.COM.**

**RESPONSE:**


**REQUEST NO. 18:**

Admit that **DEFENDANT AZOOGLEADS.COM** contracted with one or more **MORTGAGE BROKERS** to sell consumer profiles as sales leads.

**RESPONSE:**


**REQUEST NO. 19:**

Admit that **DEFENDANT AZOOGLEADS.COM** sold the "Bruce Wolf" lead identified in Plaintiff's Second Amended Complaint to Stecroft Holdings, Inc., d/b/a GoApply.com and/or eLeadz.com.

**RESPONSE:**


**REQUEST NO. 20:**

Admit that **DEFENDANT AZOOGLEADS.COM** has an agreement to sell sales leads to **DEFENDANT QUICKEN LOANS, INC.**

**RESPONSE:**


**REQUEST NO. 21:**

Admit that **DEFENDANT AZOOGLEADS.COM** has sold and continues to sell sales leads to

1  **DEFENDANT QUICKEN LOANS, INC.** on a regular basis.

2  <u>**RESPONSE:**</u>

3

4  <u>**REQUEST NO. 22:**</u>

5  Admit that **DEFENDANT AZOOGLEADS.COM** sold the "Bruce Wolf" lead identified in

6  Plaintiff's Second Amended Complaint to **DEFENDANT QUICKEN LOANS, Inc.**

7  <u>**RESPONSE:**</u>

8

9  <u>**REQUEST NO. 23:**</u>

10  Admit that **DEFENDANT AZOOGLEADS.COM** knew that the **AFFILIATES** they were using to

11  acquire leads were sending, or hiring others to send, unsolicited **COMMERCIAL**

12  **ELECTRONIC EMAILS** in violation of the *CAN SPAM Act*.

13  <u>**RESPONSE:**</u>

14

15  <u>**REQUEST NO. 24:**</u>

16  Admit that **DEFENDANT AZOOGLEADS.COM** knew that the **AFFILIATES** they were using to

17  acquire leads were sending, or hiring others to send, **COMMERCIAL ELECTRONIC EMAILS**

18  with false header information in violation of the *CAN SPAM Act*.

19  <u>**RESPONSE:**</u>

20

21  <u>**REQUEST NO. 25:**</u>

22  Admit that **DEFENDANT AZOOGLEADS.COM** knew that the **AFFILIATES** they were using to

23  acquire leads were sending, or hiring others to send, **COMMERCIAL ELECTRONIC EMAILS**

24  with misleading subject lines in violation of the *CAN SPAM Act*.

25  <u>**RESPONSE:**</u>

26

27  <u>**REQUEST NO. 26:**</u>

28  Admit that **DEFENDANT AZOOGLEADS.COM** knew that the **AFFILIATES** they were using to

1  acquire leads were sending, or hiring others to send, **COMMERCIAL ELECTRONIC EMAIL**

2  **ADVERTISEMENTS** with misleading information on their behalf.

3  **RESPONSE:**

4

5  **REQUEST NO. 27:**

6  Admit that **DEFENDANT AZOOGLEADS.COM** cannot verify that emails sent through

7  **AFFILIATES**, on **DEFENDANT AZOOGLEADS.COM's** behalf, were solicited by the intended

8  recipients of the email.

9  **RESPONSE:**

10

11  **REQUEST NO. 28:**

12  Admit that **DEFENDANT AZOOGLEADS.COM** did not provide **MORTGAGE BROKERS**

13  companies with consumer information verifying an **AFFIRMATIVE CONSENT** to receive

14  **COMMERCIAL ELECTRONIC EMAILS** from **DEFENDANT AZOOGLEADS.COM**.

15  **RESPONSE:**

16

17  **REQUEST NO. 29:**

18  Admit that **DEFENDANT AZOOGLEADS.COM** did not provide **MORTGAGE BROKERS**

19  companies with consumer information verifying an **AFFIRMATIVE CONSENT** to receive

20  **COMMERCIAL ELECTRONIC EMAIL ADVERTISEMENTS** from **AZOOGLEADS.COM**.

21  **RESPONSE:**

22

23  **REQUEST NO. 30:**

24  Admit that **DEFENDANT AZOOGLEADS.COM** does not have consumer information verifying

25  an **AFFIRMATIVE CONSENT** to receive **COMMERCIAL ELECTRONIC EMAILS** from

26  **DEFENDANT AZOOGLEADS.COM**.

27  **RESPONSE:**

28

1  **REQUEST NO. 31:**

2  Admit that **DEFENDANT AZOOGLEADS.COM** does not have consumer information verifying

3  **AFFIRMATIVE    CONSENT**    to    receive    **COMMERCIAL    ELECTRONIC    EMAIL**

4  **ADVERTISEMENTS** from **DEFENDANT AZOOGLEADS.COM**.

5  **RESPONSE:**

6

7  **REQUEST NO. 32:**

8  Admit that even though **DEFENDANT AZOOGLEADS.COM** claims it does not tolerate SPAM

9  by its **AFFILIATES**, **DEFENDANT AZOOGLEADS.COM** has taken no action sufficient to stop

10  or limit the use of SPAM by its **AFFILIATES**.

11  **RESPONSE:**

12

13  **REQUEST NO. 33:**

14  Admit that **DEFENDANT AZOOGLEADS.COM** actively provides incentives to **AFFILIATES**

15  that tends to cause **AFFILIATES** to pursue sales leads through spamming.

16  **RESPONSE:**

17

18  **REQUEST NO. 34:**

19  Admit that **DEFENDANT AZOOGLEADS.COM** has established a pattern and practice of using

20  SPAMMERS to acquire sales leads.

21  **RESPONSE:**

22

23  **REQUEST NO. 35:**

24  Admit that **DEFENDANT AZOOGLEADS.COM SENT** or had **SENT** by **AFFILIATES**, on

25  **DEFENDANT'S** behalf, **COMMERCIAL ELECTRONIC MAIL MESSAGES** advertising

26  mortgage interest rates that were **SENT** to **EMAIL ADDRESSES** at the email server with

27  **DOMAIN NAME** of: "asis.com", during the period of August 2005 to present.

28  **RESPONSE:**

1

2    **REQUEST NO. 36:**

3    If **DEFENDANT** does admit to sending or having sent any of the alleged **COMMERCIAL**

4    **ELECTRONIC MAIL MESSAGES**, admit that the **HEADER** information of the originating

5    electronic mail address, **DOMAIN NAME**, or Internet Protocol address was obtained by means

6    of false or fraudulent pretenses or representations.  This admission should include any **EMAIL**

7    **ADDRESSES**, obtained by **DEFENDANTS** or **AFFILIATES**, where the registration information

8    submitted to the domain registrar or email registrar was false or incomplete.  This admission

9    should include any **EMAIL ADDRESSES** where the email identity of a third party not directly

10   employed by **DEFENDANT** or its **AFFILIATE** was used to send **EMAILS**.

11   **RESPONSE:**

12

13   **REQUEST NO. 37:**

14   If **DEFENDANT** does admit to sending any of the alleged **COMMERCIAL ELECTRONIC MAIL**

15   **MESSAGES**, admit that the **HEADER** information does not identify the person or entity that

16   **SENT** the **EMAIL**.

17   **RESPONSE:**

18

19   **REQUEST NO. 38:**

20   If **DEFENDANT** does admit to sending or having sent any of the alleged **COMMERCIAL**

21   **ELECTRONIC MAIL MESSAGES**, admit that the subject lines of the **EMAILS** were intended

22   to cause the recipient to open the email message by stating or implying the recipient would

23   receive a reduced mortgage rates or that the consumers loan was pre-approved.

24   **RESPONSE:**

25

26   **REQUEST NO. 39:**

27   If **DEFENDANT** does admit to sending or having sent any of the alleged **COMMERCIAL**

28   **ELECTRONIC MAIL MESSAGES**, admit that the web pages that the email recipient was

1  **SENT** to by the email were an integral part of **DEFENDANTS'** commercial **EMAIL** advertising

2  program.

3  **RESPONSE:**

4

5  **REQUEST NO. 40:**

6  Admit that **DEFENDANT AZOOGLEADS.COM** had an agreement or contract in place with

7  **DEFENDANT OPTIN GLOBAL** during the **INCIDENT PERIOD.**

8  **RESPONSE:**

9

10  **REQUEST NO. 41:**

11  Admit that **DEFENDANT AZOOGLEADS.COM** had an agreement or contract in place with

12  **DEFENDANT VISION MEDIA LIMITED CORP.** during the **INCIDENT PERIOD.**

13  **RESPONSE:**

14

15  **REQUEST NO. 42:**

16  Admit that **DEFENDANT AZOOGLEADS.COM** had an agreement or contract in place with

17  **DEFENDANT RICK YANG** during the **INCIDENT PERIOD.**

18  **RESPONSE:**

19

20  **REQUEST NO. 43:**

21  Admit that **DEFENDANT AZOOGLEADS.COM** had an agreement or contract in place with

22  **DEFENDANT PEONIE PUI TING CHEN** during the **INCIDENT PERIOD.**

23  **RESPONSE:**

24

25                                                 **SINGLETON LAW GROUP**

26

27  Dated:        January 23, 2007

Richard E. Grabowski
Jason K. Singleton, Attorneys for Plaintiff,
**ASIS INTERNET SERVICES**

28

**PROOF OF SERVICE**

I declare that I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is, Singleton Law Group, 611 "L" Street, Suite "A", Eureka, CA 95501.

On January 23, 2007, I served the following document:

**PLAINTIFF'S REQUESTS FOR ADMISSIONS TO
AZOOGLEADS.COM, INC., SET ONE**

on the parties listed below as follows:

SEE ATTACHED SERVICE LIST

☐    **By facsimile machine** (FAX) by personally transmitting a true copy thereof via an electronic facsimile machine to #

☑    **By first class mail** by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid and placing the envelope in the firm's daily mail processing center for mailing in the United States mail at Eureka, California.

☐    **By personal service** by causing to by personally delivered a true copy thereof to the address(es) listed herein at the location listed herein.

☐    **By Federal Express, UPS,** or overnight mail

☐    **(State)**        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑    **(Federal)**        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 23, 2007, at Eureka, California.

_Roberta Alliston_
Roberta Alliston

1

1

<u>ASIS v OPTIN GLOBAL SERVICE LIST</u>

2

**James Snell**                                    QUICKEN LOANS, INC.
**BINGHAM McCUTCHEN LLP**

3

1900 University Avenue

4

East Palo Alto, CA 94303-2223
(650) 849-4400

5

6

**John Chu**                                       OPTIN GLOBAL, VISION MEDIA, RICK
**CORPORATE COUNSEL LAW GROUP, LLP**               YANG, PEONIE PUI TING CHEN

7

505 Sansome Street, Suite 475
San Francisco, CA 94111

8

(415) 788-4315

9

**William Schuster**                               STATESIDE MORTGAGE, INC.
**ALLIE & SCHUSTER, P.C.**                          BRUCE LERNER

10

2122 N. Broadway

11

Santa Ana, CA 92706-2614
(714) 558-8899

12

**Henry M. Burgoyne, III**                         AZOOGLEADS.COM, INC.

13

**KRONENBERGER BURGOYNE LLP**

14

150 Post Street, Suite 520
San Francisco, CA 94108

15

(415) 955-1155

16

17

18

19

20

21

22

23

24

25

26

27

28