# Exhibit L

1  Jason K. Singleton, State Bar #166170
   lawgroup@sbcglobal.net
2  Richard E. Grabowski, State Bar #236207
   rgrabows@pacbell.net
3  SINGLETON LAW GROUP
4  611 "L" Street, Suite A
   Eureka, CA 95501
5
   (707) 441-1177
6  FAX  441-1533

7  Attorneys for Plaintiff, ASIS Internet Services

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 ASIS INTERNET SERVICES, a California         )   Case No.  C-05-5124 JCS
   corporation,                                 )
11                                              )
                                                )   PLAINTIFF'S REQUEST FOR
12         Plaintiff,                           )   PRODUCTION OF DOCUMENTS AND
   vs.                                          )   THINGS, SET ONE; and REQUEST FOR
13                                              )   LOG OF LOST OR DESTROYED
                                                )   DOCUMENTS AND FOR DOCUMENTS
14 OPTIN GLOBAL, INC., a Delaware               )   SUBJECT TO CLAIMS OF PRIVILEGE TO
   Corporation, et al.,                         )   AZOOGLEADS.COM, INC., SET ONE
15                                              )
           Defendants.                          )
16                                              )   F.R.C.P., Rule 34
                                                )

17 PROPOUNDING PARTY   :   PLAINTIFF, ASIS INTERNET SERVICES

18 RESPONDING PARTY    :   DEFENDANT AZOOGLEADS.COM, INC.

19 SET NUMBER          :   ONE

20 TO:   DEFENDANT AZOOGLEADS.COM, INC., and ITS ATTORNEY OF RECORD:

21         Pursuant to *FRCP* Rule 34, Plaintiff **ASIS INTERNET SERVICES** requests that

22 **DEFENDANT AZOOGLEADS.COM, INC.** produce for inspection and copying on February 27,

23 2007, at 10:00 a.m., at the Law Offices of the Singleton Law Group, 611 "L" Street, Suite A,

24 Eureka, California, the documents described below that are in Defendant's actual or

25 constructive possession.  The documents to be produced shall be originals or shall be true and

26 correct copies of originals and verified as such under oath.  Receipt of copies <u>attached to a</u>

27 <u>pleading response</u> signed by Defendant or its attorneys prior to or on the due date by mail,

28 together with a reasonable statement of charges for photocopying them, will be treated as full

compliance with this demand, only if responding party provides Plaintiff with an estimate of the amount of charges and, if such estimate exceeds $250.00, also provides Plaintiff's counsel with a reasonable opportunity to inspect and copy the originals of said documents in lieu of receiving full copying from responding party. In responding to the Request for Production of Documents, the following definitions, instructions and document-log requests shall apply:

## I. INSTRUCTIONS

1. If you claim any documents are privileged from publication, inspection or copying, please identify the documents with sufficient particularity to enable Propounding Party and the Court to consider any privilege issue (identifying the document as to its date, type of document, length of document, subject matter of the document, author and identity of all persons to whom it was sent or received the document at any time), please identify the privilege or doctrine which you may claim; and please state the complete basis for claiming the privilege or doctrine as to each document.

2. Propounding Party also requests that you produce documents as they are kept in the usual course of business, together with all files in which produced documents are kept in the usual course of business, or that you organize and label the produced documents that correspond with the subject categories listed in this request.

3. These requests are continuing in nature such that if you subsequently locate any documents that are responsive to these requests, you are required to produce the same.

## II. DEFINITIONS

The words in **BOLDFACE** within the requests below are defined as follows:

(1) **ANY AND ALL**. The term "all" shall mean "any" and vice versa.

(2) **COMMUNICATION**. The term "Communication" shall mean any transmission of information, any information transmitted, and any process by which information is transmitted and shall include written communications and oral communications.

(3) **DOCUMENTS**. The term "Document" or "Documents" shall mean all written, printed, typed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in any form, now or

formerly in the possession, custody or control of **DEFENDANTS** or their attorneys or agents, including but not limited to, letters, correspondence, telegrams, telexes, memoranda, records, minutes, contracts, agreements, intra- and interoffice communications, microfilm, bulletins, circulars, pamphlets, studies, reports, notices, diaries, calendar entries, summaries, books, messages, instructions, work assignments, approval notes, notes, write-ups, notebooks, graphs, data sheets, data compilations, computer data compilations and computer runs, worksheets, statistics, speeches, tapes, tape recordings, press releases, public statements and public announcements, public and governmental filings, financial statements, opinions and other writings and other magnetic, photographic, electronic and sound recordings. **DOCUMENT** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writing, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

(4) **DOCUMENT** includes, but is not limited to, all articles and items referred to in ***Federal Rules of Evidence***, Rule 1001, which states:

(a) **Writings and recordings.** "Writings" and "recordings" consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostatting, photographing, magnetic impulse, mechanical or electronic recording, or other form of date manipulation.

(b) **Copies and Duplicates** are hereby incorporated into the term **DOCUMENTS**. **YOU** must produce *in toto* all **DOCUMENTS** responsive to the requests for production and **YOU** must include all **COPIES AND DUPLICATES** which are not identical to the original. As used herein, the terms **COPIES AND DUPLICATES** are defined as a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original.

(5) **YOU** and **YOUR** as used herein refers to Defendants: **AZOOGLEADS.COM, INC.**; and your officers, directors, managers, employees, agents, and assigns.

(6) **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your alter egos, your employees, your agents, your assigns, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(7) **DEFENDANT AZOOGLE** refers to **AZOOGLEADS.COM, INC., and DOES THREE through FIFTY, inclusive,** and for each of them, their officers, directors, mangers, employees, agents, and assigns.

(8) **INCIDENT** includes the circumstances and events surrounding the alleged incident, injury, or other occurrence giving rise to the action, i.e., Plaintiff's receipt of **DEFENDANTS' EMAILS,** as alleged in the complaint.

(9) **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

(10) **ADDRESS** means the street **ADDRESS**, including the city, state, and zip code.

(11) **DIRECTOR** means a natural person designated in the articles as such or elected by the incorporators and natural persons designated, elected or appointed by any other name or title to act as directors, and their successors as defined in **California Corporations Code** § 164.

(12) **OFFICER** means a chairman of the board, a president, a secretary, a chief financial officer and any such other officers with such titles and duties as shall be stated in the bylaws or determined by the board and as may be necessary to enable the corporation to sign instruments and share certificates as defined in **California Corporations Code** § 312.

(13) **AFFILIATE** is a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity who has been hired, employed, contracted, purchased, or licensed to send **EMAILS** on **DEFENDANTS'** behalf, or to acquire client profiles, sales leads, sales, contracts, or agreements on **DEFENDANTS'** behalf. **AFFILIATES** are also defined as persons hired, employed, contracted, purchased, or licensed to make sales directly or indirectly for **DEFENDANTS**. **AFFILIATES** are also

1     email list providers and/or providers either of software or services to send bulk email to
2     lists provided by them or others. **DEFENDANTS** may be in a like relationship with other
3     entities as their **AFFILIATES,** that is **DEFENDANTS** were hired by COMPANY X to
4     send **EMAILS** on their behalf.

5 (14)   **EMAIL** is an electronic mail message as defined in 15 **USC** § 7702(6).

6 (15)   **EMAIL ADDRESS** is an electronic mail address as defined in 15 **USC** § 7702(5).

7 (16)   **DOMAIN NAME** or **DOMAIN** is any alphanumeric designation which is registered with
8       or assigned by any **DOMAIN NAME** registrar, **DOMAIN NAME** registry, or other
9       **DOMAIN NAME** registration authority as part of an electronic address on the Internet,
10      as defined in 15 **USC** § 7702(4).

11 (17)   **COMMERCIAL ELECTRONIC MAIL MESSAGE** is any electronic mail message the
12       primary purpose of which is the commercial advertisement or promotion of a
13       commercial product or service (including content on an Internet website operated for a
14       commercial purpose), as defined in 15 **USC** § 7702(2)(A).

15 (18)   **SEND, SENT** or **INITIATE** when used with respect to a commercial electronic mail
16       message, means to originate or transmit such message or to procure the origination or
17       transmission of such message, but shall not include actions that constitute routine
18       conveyance of such message, as defined in 15 **USC** §7702(9). For purposes of this
19       definition, more than one person may be considered to have initiated a message.

20 (19)   **HEADER** or **HEADER INFORMATION** means the source, destination, and routing
21       information attached to an electronic mail message, including the originating DOMAIN
22       NAME and originating electronic mail address, and any other information that appears
23       in the line identifying, or purporting to identify, a person initiating the message.

24 (20)   **PROTECTED COMPUTER** is a computer that is used in interstate or foreign commerce
25       or communication, including a computer located outside the United States that is used
26       in a manner that affects interstate or foreign commerce or communication of the United
27       States, as defined in 15 **USC** § 7702(13) and 18 **USC** § 1030(e)(2)(B).

28 (21)   **RECIPIENT,** when used with respect to a commercial electronic mail message, means

an authorized user of the electronic mail address to which the message was SENT or delivered, as defined in 15 *USC* § 7702(14). If a recipient of a commercial electronic mail message has one or more electronic mail addresses in addition to the address to which the message was SENT or delivered, the recipient shall be treated as a separate recipient with respect to each such address.

(22) **AFFIRMATIVE CONSENT** or **OPT-IN,** when used with respect to a commercial electronic mail message, means (as defined in 15 *USC* § 7702(1)) that:

    (a)    the recipient expressly consented to receive the message, either in response to a clear and conspicuous request for such consent or at the recipient's own initiative; and

    (b)    if the message is from a party other than the party to which the recipient communicated such consent, the recipient was given clear and conspicuous notice at the time the consent was communicated that the recipient's electronic mail address could be transferred to such other party for the purpose of initiating **COMMERCIAL ELECTRONIC MAIL MESSAGES**.

(23) **AFFIRMATIVE CONSENT** or **OPT-IN,** when used with respect to a commercial electronic mail advertisement, means (as defined in **California Business and Professions Code §** 17529.1(d) and (o)): that the recipient has expressly consented to receive e-mail advertisements from the advertiser, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative; or the intended recipient has a preexisting or current business relationship, as defined in subdivision **California Business and Professions Code §** 17529.1(l), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.

(24) **DECEPTIVE SUBJECT HEADING** or **DECEPTIVE SUBJECT LINE,** as relates to a commercial electronic mail message, is a subject heading of the electronic mail message that would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in 15 *USC* § 45), as defined in 15 *USC* §7704(a)(2), with the intent of inducing the recipient to open the message, as described

1  in 15 *USC* §7701(a)(8).  (Also see **California Business and Professions Code §**
2  17529.5(a)(3)).
3  (25) **SUBMIT BUTTON, EMAIL IMAGE,** or **EMAIL URL** refer to any image, word, set of
4  words, or fixtures in an email, that when the recipient activates by clicking, either send a
5  message or signal to another computer and/or open a web browser containing an
6  internet web site or Internet pop-up window.
7  (26) **SENDER,** when used with respect to a commercial electronic mail message, means a
8  person who initiates or shires another to imitate such a message and whose product,
9  service, or Internet web site is advertised or promoted by the message, as defined in 15
10  *USC* §7702(16)(A).
11  (27) **FROM NAME** represents the information provided by the **SENDER** as the source of the
12  **EMAIL** in the **EMAIL HEADER** and appears in the "From:" portion of the **EMAIL**
13  **HEADER.**
14  (28) **DIRECTED WEB SITE** refers to any internet web site an email recipient is linked to by a
15  URL or other type link contained within an email.
16  (29) **INCIDENT PERIOD** refers to the period from August 1, 2005 to present.
17  (30) **LEAD GENERATORS** refers to companies who hire third parties, usually called
18  **AFFILITATES,** to generate consumer sales leads or consumer profiles and who then
19  resell or deliver those sales leads under contract to product and service companies.
20  (31) **URL** refers to Uniform Resource Locator, the global address of documents and other
21  resources on the World Wide Web.  The first part of the address indicates what protocol
22  to use, and the second part specifies the **IP ADDRESS** or the **DOMAIN NAME** where
23  the resource is located.
24  (32) **MORTGAGE BROKERS** refers to: real estate agents or agencies; banks; mortgage
25  companies; loan brokers; or other lending institutions or lending agents named in this
26  suit.
27  (33) <u>**BATES-STAMP REQUEST**</u>.  It is *requested* that **YOU** identify with reasonable
28  particularity the documents produced or to be produced, and as to each document or

set of documents, that reference be made to the particular production request that the documents relate. For ease of reference to these documents at deposition or in other proceedings, Plaintiff requests that **YOU** bates-stamp or number each document consecutively, and, refer to such numbers in identifying the documents produced.

(34) This document requests that **YOU** produce all **DOCUMENTS** that are in **YOUR POSSESSION, CUSTODY, CARE OR CONTROL** (hereafter **POSSESSION**). Such documents, etc. are deemed to be within **YOUR POSSESSION** if **YOU** have actual possession, custody, care or control, or the legal right to obtain the documents on demand (which includes documents held by architects, building designers, contractors, banks, lenders, etc. which previously or currently have been employed or retained by **YOU**.) Documents held by **YOUR** attorney, insurance company, or agent are deemed to be within **YOUR** control. Likewise, documents held by a parent corporation, subsidiary, or a branch office in another state are within **YOUR** control. Moreover, documents owned by a third person but possessed by **YOU** are within **YOUR** control.

(35) **REQUEST FOR PRIVILEGE LOG**: If **YOU** withhold from production any **DOCUMENTS** that are responsive to the requests for production below, demand is made that **YOU** provide the following information, as to each **DOCUMENT**:

A. the author(s) of the **DOCUMENT**;
B. description of the type of **DOCUMENT** (*e.g.*, letter, memorandum, note, etc.);
C. the date of the **DOCUMENT**;
D. the name and **ADDRESS** of all addressees listed on the **DOCUMENT**;
E. the name and **ADDRESS** of all persons who were provided with the **DOCUMENT** or a copy of it;
F. the name and **ADDRESS** of all persons who saw the **DOCUMENT** or a copy of it;
G. the name and **ADDRESS** of each person to whom the contents of the **DOCUMENT** were communicated;
H. the number of pages of the **DOCUMENT**;
I. the subject matter of the **DOCUMENT**; and
J. the basis for not producing the **DOCUMENT**.

(36) **REQUEST FOR LOG OF LOST OR DESTROYED DOCUMENTS**: If **YOU** are aware of any **DOCUMENTS** which have been destroyed, lost or otherwise disposed of, and which would have been responsive to any of the requests for production if the **DOCUMENTS** had not been destroyed, lost or otherwise disposed of, demand is made that **YOU** provide the following information as to each **DOCUMENT**:

A. the author(s) of the **DOCUMENT** destroyed, lost or otherwise disposed of;

B. description of the type of **DOCUMENT** destroyed, lost or otherwise disposed of (*e.g.*, letter, memorandum, note, etc.);

C. the date the **DOCUMENT** was lost, destroyed or otherwise disposed of;

D. the name and **ADDRESS** of all witnesses who have knowledge of such loss, destruction or disposal;

E. the name and **ADDRESS** of each person to whom the **DOCUMENT** was addressed or who was sent or received the **DOCUMENT** or a copy of it;

F. the name and **ADDRESS** of each person to whom the contents of the **DOCUMENT** were communicated;

G. the subject matter of the **DOCUMENT**;

H. identify all **DOCUMENTS** that relate to or refer to the loss, destruction or disposal of the **DOCUMENT**;

I. the basis for claiming any privilege or work product; and

J. the reason for destroying or otherwise disposing of the **DOCUMENT**.

### III. DOCUMENTS TO BE PRODUCED

Per the above instructions, definitions and privilege log requests, the following **DOCUMENTS** are requested:

1. Please provide the **URL** and a printed copy of any and all web sites owned or operated by **DEFENDANT AZOOGLEADS.COM** during the **INCIDENT PERIOD**.

2. Please provide a list of all **DOMAIN NAMES** and **IP ADDRESSES** owned by **DEFENDANT AZOOGLEADS.COM** during the **INCIDENT PERIOD**. This list should include the name, **ADDRESS** and any phone numbers used to register these **DOMAIN** names.

3. Please provide a list of all **EMAIL** accounts owned or used by **DEFENDANT AZOOGLEADS.COM** during the **INCIDENT PERIOD**. This list should include the name, **ADDRESS** and any phone numbers used to register these **EMAIL** accounts.

4. Please provide the agreements between **DEFENDANT AZOOGLEADS.COM**

1  and all **AFFILIATES** that were active during the incident period. These agreements must
2  show the written or electronic signature. Alternatively proof of electronic signature under
3  California law may be provided (based on the California Uniform Electronic Transactions Act
4  (CUETA) or if the agreement was created under non-California law the UETA for the state of
5  jurisdiction should be used and identified.

6    5.    Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** that refer or
7  relate to **OPT-IN** lists used to send **COMMERCIAL ELECTRONIC MAIL MESSAGES**,
8  including any **OPT-IN** list existing during the **INCIDENT PERIOD**. Actual consumer
9  information should be identified as confidential, but not redacted.

10    6.    Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** that refer or
11  relate to contracts or agreements with any **AFFILIATES** existing during the **INCIDENT**
12  **PERIOD.**

13    7.    Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** that refer or
14  relate to payments made to any **AFFILIATES** during the **INCIDENT PERIOD**.

15    8.    Please provide any and all correspondence including emails with any **AFFILIATE**
16  during the **INCIDENT PERIOD**.

17    9.    Please provide any and all correspondence regarding SPAM abuse management
18  during the **INCIDENT PERIOD**. This includes all correspondence, internal and external, with:
19  Internet Service Providers; federal or state agencies; and SPAM prevention groups such as
20  SPAMHAUS and SPAMCOP.

21    10.    Please provide any and all Complaints filed in Federal or State court against
22  **DEFENDANT AZOOGLEADS.COM** relating to violations of: the ***CAN SPAM Act***; any state
23  false advertising act using email; any breach of consumer privacy information; any false claims
24  act; libel or defamation, and any fraud claims.

25    11.    Please provide any and all correspondence including emails with any
26  **MORTGAGE BROKER** during the **INCIDENT PERIOD**.

27    12.    Please provide a list, including name, address and telephone number, of all
28  **MORTGAGE BROKERS** with whom **DEFENDANT AZOOGLEADS.COM** did business with

during the **INCIDENT PERIOD**.

13. Please provide any and all contracts or agreements between **DEFENDANT AZOOGLEADS.COM** and **MORTGAGE BROKERS** during the **INCIDENT PERIOD**.

14. Please provide any and all leads sold to or provided to any **MORTGAGE BROKER** provided during the **INCIDENT PERIOD**.

15. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** of **COMMERCIAL ELECTRONIC MAIL MESSAGES** sent to Plaintiff's **PROTECTED COMPUTERS**.

16. Please provide a sample copy of all **COMMERCIAL ELECTRONIC MAIL MESSAGES** sent by **DEFENDANT AZOOGLEADS.COM** or on behalf of **DEFENDANT AZOOGLEADS.COM** by any **AFFILIATE** or any agent of **DEFENDANT AZOOGLEADS.COM** during the **INCIDENT PERIOD**.

17. Please provide a copy of any electronic file or **DOCUMENT** containing detailed consumer information regarding consumers' **EMAILS** in **DEFENDANT AZOOGLEADS.COM** possession. Electronic copies are acceptable, actual consumer information should be designated as confidential, but not redacted. This information should not include any financial or otherwise private consumer information beyond email ID, name, address, and telephone number.

18. Please provide the correct name, **ADDRESS** and telephone number of **DEFENDANT AZOOGLEADS.COM** including individuals, corporations, partnerships, or any other legal entity. Please provide **DOCUMENTS** verifying the names, **ADDRESSES** and telephone numbers of **DEFENDANT AZOOGLEADS.COM**. State incorporation papers and identification of the Corporate headquarters is sufficient.

19. Please provide any **DOCUMENTS** that refer to, relate or describe practices or procedures established, developed, implemented or used by **DEFENDANT AZOOGLEADS.COM** to prevent violations of the *CAN SPAM ACT of 2003* or *California Business & Professions Code* § 17529.5. Please provide the dates and methods any practice or procedures were implemented.

20. Please provide the name, telephone number and address of all employees of **DEFENDANT AZOOGLEADS.COM, INC.,** from January 1, 2004 through March 30, 2006.

21. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** of business plans for **DEFENDANT AZOOGLEADS.COM, INC.,** from January 1, 2004 through March 30, 2006.

22. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** of strategic or marketing plans for **DEFENDANT AZOOGLEADS.COM, INC.,** from January 1, 2004 through March 30, 2006.

23. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** of marketing reports showing the results of marketing related to email marketing campaigns for **DEFENDANT AZOOGLEADS.COM, INC.,** from January 1, 2004 through March 30, 2006.

24. Please provide organizational charts for **DEFENDANT AZOOGLEADS.COM, INC.,** from January 1, 2004 through March 30, 2006, specifying the responsibilities and duties of each position.

25. Please provide the names of each individual occupying the positions shown in the organizational charts requested in Request Number 24 for **DEFENDANT AZOOGLEADS.COM, INC.,** from January 1, 2004 through March 30, 2006.

26. Please provide the name of any software or service that **DEFENDANT AZOOGLEADS.COM, INC.,** used to track **AFFILIATE** agreements or sales with during the incident period. If tracking was provided by a service, provide the name, telephone number and address of the service.

27. Please provide the name of any software or service that **DEFENDANT AZOOGLEADS.COM, INC.,** used to track performance and payments to **AFFILIATES** during the incident period. If tracking was provided by a service provide the name, telephone number and address of the service.

28. Please provide the name, telephone number and address of any Internet Service Provider that **DEFENDANT AZOOGLEADS.COM, INC.,** acquired internet service from January 1, 2005 through March 30, 2006.

29. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** which refer to, relate to, or allegedly "support" **YOUR FIRST AFFIRMATIVE DEFENSE** at page 12, ¶1, of **YOUR** Answer to the Complaint, **which states:**

> "1. Plaintiff has failed to state a cause of action upon which relief may be granted."

30. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** which refer to, relate to, or allegedly "support" **YOUR SECOND AFFIRMATIVE DEFENSE** at page 12, ¶2, of **YOUR** Answer to the Complaint, **which states:**

> "2. To the extent Defendant is found liable for violating California law, Plaintiff assumed the risk and contributed to its own damages."

31. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION** which refer to, relate to, or allegedly "support" **YOUR THIRD AFFIRMATIVE DEFENSE** at page 12, ¶3, of **YOUR** Answer to the Complaint, **which states:**

> "3. The allegations contained in Plaintiff's Complaint fail to confer personal jurisdiction over Defendant."

24. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION**, which refer to relate to, or allegedly "support" **YOUR FOURTH AFFIRMATIVE DEFENSE** at page 12, ¶4, of **YOUR** Answer to the Complaint, **which states:**

> "4. Any loss, injury, or damage incurred by Plaintiff was proximately caused by the acts of third parties or non-parties whom Defendant neither controlled nor had the right to control."

25. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION**, which refer to relate to, or allegedly "support" **YOUR FIFTH AFFIRMATIVE DEFENSE** at page 12, ¶5, of **YOUR** Answer to the Complaint, **which states:**

> "5. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands and Plaintiff should be estopped from bringing this lawsuit.

26. Please provide any and all **DOCUMENTS** in **YOUR POSSESSION**, which refer to relate to, or allegedly "support" **YOUR SIXTH AFFIRMATIVE DEFENSE** at page 12, ¶6, of

YOUR Answer to the Complaint, **which states:**

    "6.    Plaintiff has failed to mitigate damages, if any.

27.    Please provide any and all **DOCUMENTS** in **YOUR POSSESSION**, which refer to relate to, or allegedly "support" **YOUR SEVENTH AFFIRMATIVE DEFENSE** at page 13, ¶7, of **YOUR** Answer to the Complaint, **which states:**

    "7.    Damages, if any, were proximately caused by Plaintiff and, therefore, require an allocation of fault."

28.    Please provide any and all **DOCUMENTS** in **YOUR POSSESSION**, which refer to relate to, or allegedly "support" **YOUR EIGHTH AFFIRMATIVE DEFENSE** at page 13, ¶8, of **YOUR** Answer to the Complaint, **which states:**

    "8.    Plaintiff invited and consented to the acts of Defendant alleged in the Complaint."

29.    Please provide any and all **DOCUMENTS** in **YOUR POSSESSION**, which refer to relate to, or allegedly "support" **YOUR NINTH AFFIRMATIVE DEFENSE** at page 13, ¶9, of **YOUR** Answer to the Complaint, **which states:**

    "9.    Plaintiff waived any claim or cause of action against Defendant for the acts alleged in the Complaint."

30.    Please provide any and all **DOCUMENTS** in **YOUR POSSESSION**, which refer to relate to, or allegedly "support" **YOUR TENTH AFFIRMATIVE DEFENSE** at page 13, ¶10, of **YOUR** Answer to the Complaint, **which states:**

    "10.    Plaintiff has failed to bring this action in the appropriate venue."

31.    Please provide any and all **DOCUMENTS** in **YOUR POSSESSION**, which refer to relate to, or allegedly "support" **YOUR ELEVENTH AFFIRMATIVE DEFENSE** at page 13, ¶11, of **YOUR** Answer to the Complaint, **which states:**

    "11.    Plaintiff's claims are barred in whole, or in part, under the doctrine of preemption."

## DUTY TO SUPPLEMENT

Please be advised that you are requested to supplement you answers to the foregoing

admission requests and interrogatories as and when required by *F.R.C.P.* 26 which is hereby incorporated herein by reference.

**SINGLETON LAW GROUP**

Dated:       January 23, 2007

*/s/ Richard E. Grabowski*

Richard E. Grabowski,
Jason K. Singleton, Attorneys for Plaintiff,
**ASIS INTERNET SERVICES**

# PROOF OF SERVICE

I declare that I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is, Singleton Law Group, 611 "L" Street, Suite "A", Eureka, CA 95501.

On January 23, 2007, I served the following document:

**REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS, SET ONE; and REQUEST FOR LOG OF LOST OR DESTROYED DOCUMENTS AND FOR DOCUMENTS SUBJECT TO CLAIMS OF PRIVILEGE TO AZOOGLEADS.COM, INC., SET ONE**

on the parties listed below as follows:

SEE ATTACHED SERVICE LIST

☐ **By facsimile machine** (FAX) by personally transmitting a true copy thereof via an electronic facsimile machine to #

☒ **By first class mail** by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid and placing the envelope in the firm's daily mail processing center for mailing in the United States mail at Eureka, California.

☐ **By personal service** by causing to by personally delivered a true copy thereof to the address(es) listed herein at the location listed herein.

☐ **By Federal Express, UPS,** or overnight mail

☐ **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(Federal)** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 23, 2007, at Eureka, California.

*Roberta Alliston*
Roberta Alliston

ASIS v OPTIN GLOBAL SERVICE LIST

| | |
|---|---|
| James Snell<br>BINGHAM McCUTCHEN LLP<br>1900 University Avenue<br>East Palo Alto, CA 94303-2223<br>(650) 849-4400 | QUICKEN LOANS, INC. |
| John Chu<br>CORPORATE COUNSEL LAW GROUP, LLP<br>505 Sansome Street, Suite 475<br>San Francisco, CA 94111<br>(415) 788-4315 | OPTIN GLOBAL, VISION MEDIA, RICK YANG, PEONIE PUI TING CHEN |
| William Schuster<br>ALLIE & SCHUSTER, P.C.<br>2122 N. Broadway<br>Santa Ana, CA 92706-2614<br>(714) 558-8899 | STATESIDE MORTGAGE, INC.<br>BRUCE LERNER |
| Henry M. Burgoyne, III<br>KRONENBERGER BURGOYNE LLP<br>150 Post Street, Suite 520<br>San Francisco, CA 94108<br>(415) 955-1155 | AZOOGLEADS.COM, INC. |