**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

Attorneys for Defendant, AZOOGLEADS.COM, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASIS INTERNET SERVICES**, a California corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>**AZOOGLE.COM, INC.**, a Delaware Corporation dba AZOOGLEADS US, INC., a Delaware Corporation, and DOES ONE through FIFTY, inclusive,<br><br>    Defendants. | Case No. C-07-4630 JCS<br><br>**AZOOGLEADS.COM, INC.'S REPLY IN SUPPORT OF MOTION FOR SECURITY FOR COSTS INCLUDING ATTORNEYS' FEES**<br><br>DATE:  To Be Determined<br>TIME:  9:30 AM<br>CTRM:  A, 15TH FLOOR |

Case No. C-07-4630 JCS                              AZOOGLE'S REPLY IN SUPPORT OF MOT. FOR SECURITY

## INTRODUCTION

Plaintiff ASIS Internet Services ("ASIS") admits that it "is not financially able to post a $200,000 cost bond." Nevertheless, ASIS argues that because it isn't "on the brink of bankruptcy," it should be allowed to proceed with this litigation without security. ASIS can't have it both ways: Either ASIS has the financial ability to reimburse Defendant AzoogleAds.com, Inc. ("Azoogle") for Azoogle's certain costs and fees, in which case there is no reason to deny Azoogle's motion; or ASIS does not have that financial ability, in which case the relevant test and this Court's judgment that ASIS lacks CAN-SPAM standing all but compel the Court to order security.

ASIS does not argue that $200,000 is an excessive amount of security. Nor could it, since ASIS's conduct in a prior CAN-SPAM case involving Azoogle (*ASIS v. Optin Global, et al.* No. 05-5124 (the "Prior Case")), demonstrates a pattern and practice of abusive discovery and frivolous motions that drove the out-of-pocket cost for Azoogle to $1.5 million. As a result of its conduct in the Prior Case, ASIS currently faces a motion for costs, fees and other sanctions totaling more than $900,000. ASIS repeatedly has represented that if any portion of that amount is awarded, it will declare bankruptcy. There is no reason to believe that ASIS won't attempt the same "If I win, I win, and if I lose, I still win" strategy here.

ASIS attempts to hide behind Judge Wilken's denial in the Prior Case of a motion for security, claiming the requirement of security would chill CAN-SPAM litigation. What ASIS neglects to mention is that Judge Wilken, who denied that motion, specifically warned ASIS that if ASIS "had included [the moving defendant] in your amended complaint, you better give that some thought and discuss it with your clients because I will not hesitate to award attorneys' fees for [the moving defendant] if it turns out that they weren't properly included." (Declaration of Henry M. Burgoyne, III in Support of AzoogleAds.com, Inc.'s Motion for Security for Costs Including Attorneys' Fees ("Opening Burgoyne Decl.") ¶13 & Ex. I at 16:17-21.) At the time, neither Judge Wilken nor anyone else could foresee that ASIS would be found to lack CAN-SPAM standing . .

. much less that ASIS would go on to file another seven CAN-SPAM lawsuits.

It is difficult to imagine a situation in which security would be more appropriate. In the Prior Case, ASIS failed to demonstrate any cognizable connection between the alleged wrongdoing and any named defendant. ASIS failed to identify the initiator of the emails, much less show that any defendant had any reason to know of any wrongdoing. ASIS also failed to proffer any expert technical opinion evidence, and in the end couldn't even prove that it had standing to bring a claim. Despite that the cookie-cutter complaint in this action looks eerily similar to every one of ASIS's other CAN-SPAM complaints, ASIS suggests that a finding of liability here is all but a foregone conclusion. ASIS's promises sound all too familiar. At some point, some court is going to have to require ASIS to put its money where its mouth is. If not on this motion, then when? For those and other reasons articulated herein and in Azoogle's moving papers, the Court should grant Azoogle's motion for security.

## ARGUMENT

### I. The Undisputed Evidence Demonstrates that ASIS Will File for Bankruptcy if Azoogle Is Entitled to its Costs and Fees.

On multiple occasions, counsel for ASIS said that ASIS would declare bankruptcy if ordered to pay costs or attorneys' fees in the Prior Case. (Opening Burgoyne Decl. ¶14.) When asked at deposition if this was true, ASIS's Chief Executive Officer refused to answer, stating: "Well I haven't really made a decision about something that hasn't happened and is probably not likely to happen in my opinion." (Declaration of Henry M. Burgoyne, III in Support of AzoogleAds.com, Inc.'s Reply in Support of Motion for Security for Costs Including Attorneys' Fees ("Reply Burgoyne Decl.") ¶3 & Ex. A.) As the record reveals, ASIS lost that nearly identical case on multiple issues, and is now facing a $40,000 bill of costs and a motion for attorneys' fees and sanctions in excess of $900,000. (Reply Burgoyne Decl. ¶¶4-5 & Exs. B-C.) If, as ASIS admits, it cannot post a $200,000 bond, how does it plan to pay these costs and fees and still have resources to reimburse Azoogle for the hundreds of thousands of dollars Azoogle certainly will

spend in defending this suit?  The answer, of course, is that ASIS intends to walk away from any defeat no worse for the wear, by vehemently resisting any request for costs and fees and, if that doesn't work, by declaring bankruptcy.

In its Opposition, ASIS argues that statements concerning its plans to file bankruptcy in relation to the Prior Case are "inaccurate." (Opp. at 2:9-10.)  However, ASIS never explains how these statements are inaccurate, and fails to provide a shred of evidence refuting their accuracy.  ASIS could have provided a declaration by its counsel that he never made the statements in question.  So, too, could ASIS have provided certified balance sheets, income statements, and tax returns to show that it will be able to reimburse Azoogle for the costs and fees Azoogle certainly will incur.  ASIS has done none of this.  Its kneejerk dismissal of its likely bankruptcy is simply not sufficient assurance of ASIS's solvency.

ASIS relies on Federal Rule of Evidence 408 to claim that its counsel's multiple statements regarding ASIS's plan to file bankruptcy are inadmissible. (Opp. at 2:9-12.) ASIS completely misunderstands Rule 408.  This Rule only bars the admissibility of statements "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction."  None of these categories is at issue here, in particular because the statements were made in reference to the Prior Case and not this action.  ASIS's argument is simply a last-ditch effort to withdraw unwise statements made in an attempt to shield itself from unrelated liability.

**II.    ASIS's Argument that it Cannot Be Required to Pay Costs and Attorneys' Fees if its Case Is Dismissed for Lack of Standing Rests on an Obvious and Fundamental Misreading of Federal Law.**

In this case, as in others, ASIS argues that if its claims are dismissed "on the basis of a lack of standing, then Defendant cannot recover attorney fees." (Opp. at 2:20-21).  ASIS's position rests on an obvious conflation of constitutional standing and statutory standing. The Ninth Circuit has expressly ruled that where a plaintiff has been found to lack statutory standing, the court nevertheless retains jurisdiction to award

1  costs and fees. *Credit Managers Ass'n of Southern California v. Kennesaw Life and Acc. Ins. Co.*, 25 F.3d 743, 747-48 (9th Cir. 1994). "[I]t would be unjust to permit [a plaintiff] to insulate itself from liability for attorney's fees simply because it failed to produce sufficient evidence to prevail on its claims." *Id.* at 747. ASIS's "have-its-cake-and-eat-it-too" attitude, in this and other actions, grows tiring. The Court should put an end to it by requiring ASIS to post security as requested by Azoogle.

**III.  ASIS's CAN-SPAM Litigation History Evidences a Pattern and Practice of Abusive Discovery and Frivolous Motions that Will Drive Azoogle's Costs and Fees Well into the Six Digits.**

While ASIS glibly claims that "Defendant will not incur any significant recoverable costs," the record of ASIS's past litigation conduct contradicts this statement. (Opp. at 2:18.) ASIS does not—and cannot—dispute that in the Prior Case, Azoogle incurred attorneys' fees and costs in excess of $1.5 million dollars, most of which was incurred in responding to ASIS's burdensome discovery and abusive motion practice.

With regard to discovery, ASIS's record in the Prior Case speaks for itself. For example, ASIS propounded written discovery requests to Azoogle seeking:

- All agreements between Azoogle and its 20,000 plus affiliates (Opening Burgoyne Decl. ¶17 & Ex. L at Nos. 4, 6);
- All documents relating to payments Azoogle made to any of its 20,000 plus affiliates from August 2005 to the present (*Id.* at No. 7);
- All correspondence between Azoogle and its 20,000 plus affiliates (*Id.* at No. 8);
- All of Azoogle's business plans for a two-and-a-half year period (*Id.* at Nos. 21-23);
- All of Azoogle's documents relating to its mortgage marketing program (*Id.* at No. 41);
- All emails that Azoogle received in its spam traps for over a year (*Id.* at No. 46);
- The name, address, and telephone number for each of Azoogle's 20,000 plus affiliates (*Id.* ¶15 & Ex. J at No. 9); and

- The amount of money that Azoogle paid and received for leads since 2005 (*Id.* at Nos. 11-12).

In the face of ASIS's refusal to narrow *any* of those requests, Azoogle filed its first motion for a protective order. (Reply Burgoyne Decl. ¶6 & Ex. D.) During an *in-camera* meet-and-confer regarding that motion, the Court observed that ASIS's requests would have to be "narrowed dramatically." (*Id.*)

ASIS's oppressive discovery practices did not end there, but in fact worsened, culminating with its service of over 120 third party subpoenas to Azoogle's affiliates, business partners and service providers, and to wholly unrelated entities. (Opening Burgoyne Decl. ¶18 & Ex. M.) Those subpoenas demanded, among other things, documents concerning any "SPAM complaint[s] regarding or relating to Azoogle, Inc." (Reply Burgoyne Decl. ¶7 & Ex. E.) Ultimately, Azoogle was forced to seek further protection from the Court. The Court granted Azoogle's request for a protective order, quashing all of ASIS's then-outstanding subpoenas and concluding:

> **[I]t is apparent that Plaintiff has abused the privilege of serving discovery on non-parties.** Plaintiff has served approximately 121 subpoenas on non-parties in this matter. Those subpoenas, as demonstrated in the case management conference statement, are not limited to the subject matter of this action, let alone to the claims raised in this action. To the contrary, **those subpoenas are overbroad and oppressive, and seek information regarding [the defendant] that has nothing to do with this lawsuit.** (Opening Burgoyne Decl. ¶19 & Ex. N) (emphasis added).)

As for ASIS's motions practice, not counting ASIS's *ex parte* discovery communications and administrative requests to file documents under seal, ASIS filed eight motions in the Prior Case, not a single one of which was granted, and several of which were denied without oral argument and/or with critical remarks from the Court. As limited examples:

- **ASIS's Motion for Summary Adjudication of Issues**: ASIS disregarded the stipulated order specifying the issues to be briefed, and addressed issues of its own choosing. In support of its arguments, ASIS filed 40 pages of briefing and 184 pages of

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

exhibits. The Court denied ASIS's motion in its entirety, stating: "I certainly think that the way that, Mr. Singleton, you couched your motions, is completely inappropriate for summary judgment. It's not a summary judgment motion. I'll also take you to task, but I'll leave it at that, for defying the stipulation you entered into—Completely Improper." (Reply Burgoyne Decl. ¶8 & Ex. F at 2:12-17.)

- **ASIS's Motion for Issuance of Letters Rogatory**: ASIS asked the Court to authorize the issuance of a foreign subpoena by the Quebec, Canada judicial authority. ASIS claimed the subpoena—directed to a small, unrelated third party—was necessary to prove that Azoogle violated CAN-SPAM. The Court denied ASIS's motion, finding that ASIS had "not provided any justification" for the supposed connection between the third party and Azoogle. The Court concluded: "[I]t appears that this discovery request is a 'wholly exploratory operation.'" (Reply Burgoyne Decl. ¶9 & Ex. G at 6.)

- **ASIS's Motion for Evidentiary Sanctions for Failure to Produce Witness at Deposition**: ASIS took the deposition of Jennifer Evans after several delays caused by scheduling conflicts, unexpected medical difficulties and a death in Ms. Evans' family. Immediately after taking the deposition, ASIS moved the Court for evidentiary sanctions arising out of the scheduling difficulties. In denying ASIS's motion without oral argument, the Court observed: "[I]t is clear to the Court that both sides bear some measure of responsibility in the difficulty in scheduling Ms. Evans' deposition." (Reply Burgoyne Decl. ¶10 & Ex. H.)

It is unusual for a party to file eight motions. It is extraordinary for a party to file eight motions and lose every one. In light of ASIS's record, and the frivolousness of so many of ASIS's supporting arguments, it cannot be denied that ASIS's motion practice imposed significant and unnecessary litigation expenses on Azoogle. The Court should require appropriate security to prevent ASIS from again imposing these sorts of costs on Azoogle and then seeking to avoid paying them when its case fails. As even ASIS does not dispute, a bond of $200,000 is the minimum undertaking necessary to provide this assurance.

### IV. ASIS's Merits Argument Contravenes Three Prior Opinions on Standing.

Three federal courts have now held that for an ISP to have standing under CAN-SPAM it must have suffered a significant adverse effect of the type uniquely experienced by providers of Internet Access Services. *ASIS Internet Services v. Optin Global, Inc.*, No. 05-05124, 2008 WL 1902217, slip. op. (N.D. Cal. April 29, 2008); *Brosnan v. Alki Mortgage, LLC*, No. 07-4339, 2008 WL 413732, slip. op. (N.D. Cal. Feb. 13, 2008); *Gordon v. Virtumundo, Inc.*, No. 06-0204, 2006 WL 3873368, slip. op. (W.D. Wash. Dec. 8, 2006). In fact, the decision in the Prior Case found that ASIS itself could prove no such adverse effect. Specifically, the Court found that after a year-and-a-half of prosecuting its case:

> There is *no* evidence in the record that any of the Emails either reached any active ASIS users (rather than being filtered by Postini) or were the subject of complaints to ASIS; there is *no* evidence in the record that ASIS had to increase its server capacity or experienced crashes as a result of the Emails; and there is *no* evidence in the record that ASIS experienced higher costs for filtering by Postini as a result of the Email. . . . In short, ASIS suffered no meaningful adverse effect as a result of the Emails of any kind. *ASIS Internet Services*, 2008 WL 1902217 at *17 (emphasis in original).

Nevertheless, in its Opposition, ASIS spends five pages disputing these legal authorities, citing a Senate committee report and an FTC staff report. (Opp. at 6-8.) ASIS also concludes that the Court's decision finding that ASIS lacked standing is not preclusive here because "a court cannot assume the truth of the facts presented on a prior decision." (Opp. at 5:1-2.) Again, ASIS has fundamentally misconstrued the relevant law. A well-established exception to this limitation on judicial notice exists where a court is engaging in a collateral estoppel inquiry. *See, e.g.*, *Kourtis v. Cameron*, 419 F.3d 989, 995, n.3 (9th Cir. 2005); *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998).

Ultimately, none of ASIS's diatribe is relevant to Azoogle's request for security. Regardless of what the Senate committee report says about CAN-SPAM, ASIS has admitted that it cannot afford, or simply will not pay, any costs or attorneys' fees in

relation to its CAN-SPAM litigation activities.  Furthermore, ASIS's history of litigating CAN-SPAM actions illustrates a pattern and practice of abusive conduct that is sure to drive Azoogle's out-of-pocket defense costs well into the six figures.  These are the relevant factors in assessing a request for security, not what an FTC staff report said about spam filtering services.  Because the relevant factors point to ASIS's inability to reimburse Azoogle for its likely attorneys' fees, a requirement of security is all but compelled.

## V.   ASIS Assumes the Merits of its Case.

ASIS goes to great lengths arguing the merits of its case, but can't verify the truth of its allegations.  ASIS has a pattern and practice of including in its cookie-cutter complaints allegations that are not credible, if not outright false.  Each and every one of ASIS's eight CAN-SPAM complaints has contained nearly identical allegations of conspiracy, agency relationships, and the use of specific technical devices.  (Opening Burgoyne Decl. ¶¶6-12 & Exs. B-H.)  In its Prior Case, ASIS made these allegations with no evidentiary basis, and persisted with them long after it possessed evidence foreclosing them.  There's no reason to believe that ASIS's allegations in this Complaint are any more credible.  As in ASIS's Prior Case, it is unlikely, if not impossible, that ASIS has any evidence or information supporting the following allegations:

- **Paragraph 6:**  Azoogle conspired with unnamed parties to violate CAN-SPAM;
- **Paragraphs 8:**  Azoogle sent or caused to have sent 1296 commercial emails to ASIS's computers;
- **Paragraph 9:**  The owners of the accounts that received the emails at issue had not solicited these emails; and
- **Paragraphs 11:**  Azoogle used a "harvest and directory attack" in connection with its alleged wrongdoing.

ASIS set forth nearly identical allegations in its Prior Case.  (Opening Burgoyne Decl. ¶6 & Ex. B.)  On summary judgment, ASIS could not produce a shred of evidence to support these or any of its other material allegations, and the Court found the same in

granting summary judgment against ASIS. *ASIS Internet Services*, 2008 WL 1902217 at *passim*.

Because ASIS has failed to set forth any credible reason why it should not post security, the Court should require a bond, as expressly provided for in CAN-SPAM.

## CONCLUSION

For all of the reasons set forth above, the Court should require ASIS to post a bond in the form of security for costs and fees in the amount of $200,000.

Dated: June 3, 2008

    Henry M. Burgoyne, III
    Karl S. Kronenberger
    Jeffrey M. Rosenfeld
    Margarita Calpotura
    Kronenberger Burgoyne, LLP

By: _____/s/_____
    Henry M. Burgoyne, III

Attorneys for Defendant,
AZOOGLEADS.COM, INC.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com